UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN G. MCNULTY

       Plaintiff,

v.

REDDY ICE HOLDINGS, INC., REDDY ICE
CORPORATION, ARCTIC GLACIER
INCOME FUND, ARCTIC GLACIER, INC.,
ARCTIC GLACIER INTERNATIONAL, INC.,
HOME CITY ICE COMPANY, INC., KEITH
CORBIN, CHARLES KNOWLTON, JOSEPH
RILEY,

       Defendants.
_____/

Case Number: 08-CV-13178

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

**OPINION AND ORDER
(1) GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION;
(2) REVERSING THE COURT'S MAY 29, 2009 ORDER DISMISSING PLAINTIFF'S
RICO CLAIM UNDER 18 U.S.C. § 1962(c) AGAINST DEFENDANTS REDDY ICE
HOLDINGS, INC., REDDY ICE CORPORATION, HOME CITY ICE COMPANY, AND
JOSEPH RILEY; AND
(3) REINSTATING PLAINTIFF'S RICO CLAIM UNDER 18 U.S.C. § 1962(c) AGAINST
DEFENDANTS REDDY ICE HOLDINGS, INC., REDDY ICE CORPORATION, HOME
CITY ICE COMPANY, AND JOSEPH RILEY**

      Now before the Court is plaintiff Martin G. McNulty's ("Plaintiff") Motion for Reconsideration filed on June 28, 2009. (Dkt. No. 88). Plaintiff filed the Motion as a result of the U.S. Supreme Court's recent decision in *Boyle v. United States*, No. 07-1309, 2009 WL 1576571, __ U.S. __ (June 8, 2009). Plaintiff asks this Court to reconsider its findings regarding the existence of a RICO enterprise in light of *Boyle*. Because Plaintiff's factual allegations against Home City Ice Company, Reddy Ice Holdings, Inc., Reddy Ice Corporation, and Joseph Riley meet the

threshold standard for a RICO enterprise articulated in *Boyle*, the Court GRANTS Plaintiff's Motion for Reconsideration and REINSTATES his claim under 18 U.S.C. § 1962(c) against Home City Ice Company, Reddy Ice Holdings, Inc., Reddy Ice Corporation, and Joseph Riley.

**I.    BACKGROUND**

Plaintiff, a former packaged ice salesperson, was an employee of Arctic Glacier International, Inc., the wholly-owned subsidiary of Arctic Glacier, Inc., which is the wholly-owned subsidiary of Arctic Glacier Income Fund. These three companies are collectively referred to as "Arctic Glacier." Plaintiff alleges that while he was employed by Arctic Glacier, he discovered that Arctic Glacier was involved in a market allocation scheme with Home City Ice Company ("Home City"). Upon questioning Keith Corbin, a former vice president of sales for Arctic Glacier, about the market allocation scheme between Arctic Glacier and Home City, Mr. Corbin allegedly informed him that Arctic Glacier had the same market allocation arrangement with Reddy Ice Holdings, Inc. and Reddy Ice Corporation (collectively, "Reddy Ice"). Plaintiff alleges that he refused to participate in the market allocation scheme and that as a result, Arctic Glacier terminated him.

Shortly following his termination from Arctic Glacier, Plaintiff signed an agreement with Arctic Glacier, titled "FULL AND FINAL RECEIPT, RELEASE, DISCHARGE AND NON-COMPETITION AGREEMENT" ("Release"). In addition to containing a six month non-compete clause, the Release provides that in consideration of a severance payment, Plaintiff agreed not to sue Arctic Glacier or its employees with respect to any claims that he has prior to or as of the time that he signed the Release. During the pendency of the non-compete period, Plaintiff informed the federal government of alleged collusion among his former employer, Arctic Glacier, and Home City and Reddy Ice, and began working with federal authorities on the matter, including the Federal

Bureau of Investigation ("FBI") and the Department of Justice.

After the non-compete period expired, Plaintiff alleges that he actively began looking for employment with manufacturers and distributors of packaged ice; his only promising lead was from Tropic Ice Company ("Tropic Ice"), which was later acquired by Arctic Glacier. Joseph Riley, the President of Tropic Ice agreed to meet with Plaintiff to discuss his application for employment. During the meeting, Mr. Riley informed Plaintiff, who allegedly was wearing a recording device provided to him by the FBI, that Arctic Glacier and its co-conspirators in the market allocation scheme had all agreed not to hire Plaintiff—specifically, that Plaintiff was being "blackballed" from the industry. Mr. Riley also informed Plaintiff that Tropic Ice had also been conspiring with Arctic Glacier to allocate markets. Despite this, Plaintiff alleges that Mr. Riley told him that he would call him to discuss Plaintiff's potential employment with Tropic Ice. After Mr. Riley never called Plaintiff, Plaintiff called him and was told that Tropic Ice had agreed with Arctic Glacier that it would not hire Plaintiff.

On July 23, 2008, Plaintiff filed the instant suit against Reddy Ice, Arctic Glacier, Home City, Mr. Corbin, Mr. Knowlton, and Mr. Riley (collectively "Defendants"), alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO"). Defendants each moved this Court to dismiss all of Plaintiff's claims. In an Opinion and Order dated May 29, 2009 ("Order"), the Court dismissed all of Plaintiff's claims against Defendants Reddy Ice, Home City, Mr. Corbin, and Mr. Riley. As to Plaintiff's RICO claim, the Court found that Plaintiff alleged facts, which if true, would establish only that Arctic Glacier, not the other Defendants implicated in the market allocation scheme, constituted a RICO enterprise.

## II.     ANALYSIS

### A.     Standard of Review

Plaintiff indicates that his Motion is brought pursuant to Federal Rule of Civil Procedure 54(b). Under Rule 54(b), district courts may revise any interlocutory judgments "at any time before the entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." *See also Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders.") (citations omitted). Although Local Rule 7.1(g)(1) provides that "[a] motion for rehearing or reconsideration must be filed within 10 days after entry of the judgment or order," that rule is inapplicable where, as here, there is a purported intervening change in controlling law, especially considering that a district court's power under Rule 54(b) is discretionary and may be exercised at "any time." *See Kniffen v. Macomb County*, 2006 WL 3205364, at *1 (E.D. Mich. Nov. 3, 2006) (citing *Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 492 (D.C. Fla. 1999)).

### B.     RICO Enterprise

As noted by Plaintiff, the U.S. Supreme Court decision in *Boyle*, recently clarified the standard for demonstrating a RICO enterprise. According to *Boyle*, an association-in-fact enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at *5. An association-in-fact under *Boyle*, however, does not require any hierarchical structure:

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the

4

>group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.

*Id*. at *6.

While Boyle does not represent a watershed change in controlling law, it does constitute a important clarification of the standards for establishing a RICO enterprise originally set forth in *United States v. Turkette*, 452 U.S. 576, 583 (1981). Such a clarification was necessary because many of the circuits, including the Sixth Circuit, either wrongly applied or cited a more stringent standard than was required under *Turkette*.

In support of their respective Motions to Dismiss Plaintiffs' Amended Complaint, Reddy Ice, Home City, and Mr. Riley all argued that this Court should apply the standard espoused in *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) and later cited in *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000) and *United States v. Chance*, 306 F.3d 356 (6th Cir. 2002). In those cases, the Sixth Circuit held that "an association-in-fact . . . must be separate from the pattern of racketeering activity in which it engages," *Frank*, 4 F.3d at 1386, and that a "hallmark of a RICO enterprise is its *ability to exist apart from the pattern of wrongdoing*." *VanDenBroeck*, 210 F.3d at 699 (emphasis added). Some courts have taken this language to mean that the existence of an enterprise may not be inferred from evidence showing that associates engaged in a pattern of racketeering; they must be separate—a standard which the Supreme Court specifically rejected in *Boyle*.

In deciding Defendants' Motions to Dismiss, this Court chose not to apply the language in *Frank*. Instead, the Court relied on a more recent Sixth Circuit decision in *United States v. Johnson*,

5

440 F.3d 832 (6th Cir. 2006). There, the Sixth Circuit held that "[a] RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. The continuity of an informal enterprise and the differentiation among roles can provide the requisite structure to prove the element of enterprise." *Id*. at 840. Certainly, such a standard is much closer to the Supreme Court's clarification in *Boyle* than that enumerated in *Frank* or *VanDenBroeck*, but *Johnson* does not go quite as far as *Boyle*. As quoted above, the *Boyle* Court specifically rejected any requirement of rigid decision-making schemes.

In applying *Johnson*, this Court held that Plaintiff did not allege facts establishing "any kind of meaningful structure among Defendants that would otherwise distinguish their relationship from a mere conspiracy, " and that as a result, Plaintiff did not allege that Defendants, or any combination of Defendants, constituted a RICO enterprise. Order at 23. The lack of "meaningful" structure was predicated on *Johnson's* organizational requirements. *Boyle* removed any such requirements and instead held that an association-in-fact enterprise need only have three structural features: "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 2009 WL 1576571, at *5.

In the instant action, the Court finds that Plaintiff adequately pled a RICO enterprise against Defendants Arctic Glacier, Reddy Ice, Home City, and Mr. Riley, alleging facts sufficient to satisfy *Boyle's* three structural elements.

Initially, it is important to remember that the Court found that Plaintiff, in signing his Release, has waived any and all claims that he had against Arctic Glacier, and its employees, Mr. Knowlton and Mr. Corbin, prior to February 17, 2005, including claims pertaining to alleged price

fixing scheme. Therefore, the Court cannot use allegations of Arctic Glacier's, Mr. Knowlton's, or Mr. Corbin's involvement in the market allocation scheme prior to February 17, 2005 to establish a RICO enterprise, which includes one or all of these Defendants as an associate of that enterprise.

As to the first *Boyle* element, Plaintiff contends that Defendants had a common purpose: "to raise the price of packaged ice and decrease competition in order to increase profits, and to prevent or discourage others—including Plaintiff—from interfering with profitable schemes." (Pl.'s Br. at 5 n.7). In spite of the constraints imposed by the Release, Plaintiff has pled facts, that if proven to be true, would establish a common purpose among Arctic Glacier, Home City, Reddy Ice, and Mr. Riley to boycott Plaintiff's employment in the packaged ice market in order to further their alleged market allocation scheme. For instance, Plaintiff alleges that Mr. Riley not only told him that Tropic Ice had been conspiring with Arctic Glacier to allocate markets but also more importantly, that Arctic Glacier and its co-conspirators in the market allocation scheme, i.e., Home City and Reddy Ice, had all agreed not to hire Plaintiff in furtherance of their market allocation scheme. (*See* Am. Compl. ¶¶ 46-47, 64).

As to the second structural feature, Plaintiff contends that he alleged sufficient relationships "among the Defendants, including periodic meetings and telephone calls in furtherance of the market allocation conspiracy and in furtherance of the scheme to tamper with and retaliate against Plaintiff." (Pl.'s Br. at 5 n.7). In support, Plaintiff cites paragraphs fifty and fifty-one of his Amended Complaint. These paragraphs, when read in conjunction with paragraphs forty-six through forty-eight, are sufficient to establish relationships among Defendants Arctic Glacier, Home City, Reddy Ice, and Mr. Riley. That is, although these paragraphs do not establish any more formal organizational structure such as hierarchical decision-making or fixed roles, they are sufficient to

7

establish a continuing relationship among Arctic Glacier, Home City, Reddy Ice, and Mr. Riley to boycott Plaintiff's employment in the packaged ice industry in furtherance of their market allocation scheme.

Plaintiff has also alleged facts sufficient to establish the third structural element—longevity sufficient to permit Arctic Glacier, Home City, Reddy Ice, and Mr. Riley to boycott Plaintiff from the packaged ice industry in order to further their market allocation scheme. Arctic Glacier terminated Plaintiff in January 2005. In March 2005, Arctic Glacier allegedly attempted to bribe Plaintiff by offering his job back at an increased salary if he ceased cooperating with the government. In September 2005, Plaintiff applied for employment with Home City, but his application was rejected. Sometime in late 2005 or early 2006, Plaintiff applied for employment with Tropic Ice and arranged a meeting with its president, Mr. Riley. During the January 27, 2006 meeting, Plaintiff allegedly learned that Arctic Glacier, Home City, and Reddy Ice had all agreed not to hire Plaintiff. Six weeks later, Plaintiff also allegedly learned that Mr. Riley agreed with Arctic Glacier not to hire Plaintiff. Therefore, roughly a year had passed from the time that Arctic Glacier had attempted to bribe Plaintiff to Plaintiff finding out that even Tropic Ice had agreed to boycott Plaintiff from employment in the packaged ice industry. The Court finds that this is a sufficient period of time for these associates to carry out the enterprise's purpose, thereby satisfying *Boyle's* third structural element.

### C.  Pattern of Racketeering Activity and Proximate Cause

Including Home City, Reddy Ice, and Mr. Riley as part of the RICO enterprise does not alter the pattern of racketeering activity and proximate cause findings. As alleged, and as limited by the Release, the RICO enterprise consisting of Arctic Glacier, Home City, Reddy Ice, and Mr. Riley was

to boycott Plaintiff from employment in the packaged ice industry in order to persuade Plaintiff from cooperating with government officials and to punish Plaintiff for actually doing so. Therefore, while the pattern of racketeering activity may include predicate acts of mail fraud and wire fraud by Home City, Reddy Ice, and Mr. Riley, it remains squarely directed at Plaintiff.

### III.   CONCLUSION

For the reasons stated, the Court

(1)   GRANTS Plaintiff's Motion for Reconsideration;

(2)   REVERSES its May 29, 2009 Order dismissing Plaintiff's RICO claim under 18 U.S.C. § 1962(c) against Home City, Reddy Ice, and Mr. Riley for failing to adequately allege their involvement in a RICO enterprise; and

(3)   REINSTATES Plaintiff's RICO claim under 18 U.S.C. § 1962(c) against Home City, Reddy Ice, and Mr. Riley.

**SO ORDERED.**

                                                      s/Paul D. Borman  
                                                      PAUL D. BORMAN  
                                                      UNITED STATES DISTRICT JUDGE

Dated: July 17, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 17, 2009.

                                                     s/Denise Goodine  
                                                   Case Manager