UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN G. McNULTY,

               Plaintiff,

v.

REDDY ICE HOLDINGS, INC.,
ET AL.,

             Defendants.

_____/

Case No. 08-13178

Honorable Paul D. Borman
United States District Judge

Honorable R. Steven Whalen
United States Magistrate Judge

**OPINION AND ORDER RE: PLAINTIFF'S MOTION TO
COMPEL REDDY ICE TO PRODUCE DOCUMENTS [Doc. #143]
AND MOTION TO COMPEL HOME CITY ICE TO
PRODUCE DOCUMENTS [Doc. #144]**

Before the Court is Plaintiff Martin McNulty's Motion to Compel Reddy Ice to Produce Documents [Doc. #143] and to Compel Home City Ice to Produce Documents [Doc. #144]. The motions will be DENIED for the reasons set forth below.

## I.   BACKGROUND

The basic facts of this case were thoroughly discussed in Judge Borman's May 29, 2009 Opinion and Order granting in part Defendants' motion to dismiss [Doc. #84 ] and in his subsequent July 17, 2009 Opinion and Order granting reconsideration [Doc. #98], and they need not be repeated here in any great detail.  In short, Mr. McNulty alleges that he was terminated from his employment at Defendant Arctic Glacier, Inc.[1] because of his refusal to participate in an alleged unlawful market allocation scheme within the packaged ice industry. In addition, Mr. McNulty alleges that after he parted ways with Arctic Glacier, he was blackballed in the industry, and thus prevented from obtaining any employment in his field.  In his amended complaint filed

_____

[1] The present motion to compel is directed at Defendants Arctic Glacier Income Fund, Arctic Glacier, Inc. And Arctic Glacier International, Inc., which will be collectively referred to as "Arctic Glacier."

on December 2, 2008 [Docket #43], he alleged the following causes of action against all Defendants: **Count I:** violation of Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); **Count II:** violation of RICO, 18 U.S.C. § 1962(d); **Count III:** violation of the Sherman Act, 15 U.S.C. § 1; **Count IV:** conspiracy to restrain trade in violation of the Michigan Antitrust Reform Act, M.C.L. § 445.772; and **Count V:** tortious interference with prospective economic advantage.

On May 29, 2009, Judge Borman granted in part the Defendants' motion to dismiss, dismissing all Counts except (1) RICO claims against Defendants Arctic Glacier and Knowlton under 18 U.S.C. § 1962(c) (Count I); (2) claim of tortious interference with prospective economic advantage against Defendant Arctic Glacier (Count V). The May 29th Opinion was based in part on the fact that on February 17, 2005, following his termination with Arctic Glacier, the Plaintiff signed a release agreeing not to sue Arctic Glacier or any parent or subsidiary corporations, partners, directors, employees or agents, for any claims arising before the date of the release.

On July 17, 2009, Judge Borman granted the Plaintiff's motion for reconsideration, and reinstated the RICO claims against Defendants Reddy Ice Holdings, Inc., Reddy Ice Corporation, Home City Ice Company and Joseph Riley under 18 U.S.C. § 1962(c). Judge Borman granted reconsideration based on the intervening Supreme Court case of *Boyle v. United States*, __U.S.__, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), which clarified the standard for demonstrating a RICO enterprise. However, he reiterated that proof of the RICO claim was limited by the Plaintiff's waiver, and that based on the release, "the Court cannot use allegations of Arctic Glacier's, Mr. Knowlton's, or Mr. Corbin's involvement in the market allocation scheme prior to February 17, 2005 to establish a RICO enterprise, which includes one or all of these Defendants as an associate of that enterprise." *Opinion*, Doc. No. 98, p.7.

Prior to the hearing on the present motion to compel, the parties filed Joint Lists of Resolved and Unresolved Issues [Doc. #166 and Doc. #167], indicating that they reached agreement on some, but not all issues. Still unresolved are Defendants general objections to

-2-

documents related to the underlying market allocation conspiracy.  Also unresolved are a number of requests related to the employment histories, including hiring, firing, job performance and salaries, of Reddy Ice and Home City Ice personnel.

## II.   GENERAL PRINCIPLES OF DISCOVERY

The scope and limits of discovery are set forth in Fed.R.Civ.P. 26(b). Rule 26(b)(1) states, in pertinent part:

> "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action...All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)."

Under Rule 26(b), the scope of discovery is broad.  *Lewis v. ABC Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial.  The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence."  *Id.*, quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970).  It is well established that  "the scope of discovery is within the sound discretion of the trial court."  *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).  However, the Court may limit discovery if "the discovery sought is unreasonably cumulative or duplicative [or] ... the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2). "[M]ost discovery disputes are resolved by balancing the relevance, importance, and need for the discovery on one hand against the burden, expense, and possibility of waste of time and effort on the other."  *El Camino Resources, Ltd. v. Huntington Nat. Bank*,  2008 WL 4833009, *1 (W.D.Mich. 2008).

## III. DISCUSSION

### A.   The Underlying Market Allocation Conspiracy

This is a RICO case.  As such, the Plaintiff must prove a "pattern of racketeering activity" consisting of at least two predicate acts. 18 U.S.C. § 1961(5). "In addition to proving the prerequisite of two predicate acts, a plaintiff must show both a 'relationship between the

predicates' and the 'threat of continuing activity.'" *Vild v. Visconsi*, 956 F.2d 560, 565 (6th Cir.

1992), quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2900,

106 L.Ed.2d 195 (1989). The question in the present case is whether Defendant's alleged

participation in the underlying market allocation conspiracy meets the "relationship test" such

that it can be considered a predicate act under RICO.

The Supreme Court in *H.J. Inc.* provides guidance, stating that the relationship

requirement may be satisfied if the alleged predicate acts "have the same or similar purposes,

results, participants, victims, or methods of commission, or otherwise are interrelated by

distinguishing characteristics and are not isolated events." *Id.*, 109 S.Ct. at 2901. For a number

of reasons, the market allocation scheme cannot form the basis of a RICO predicate act under the

facts of this case.

First, in his May 29, 2010 order, Judge Borman not only dismissed the Plaintiff's Sherman

Act claim, but specifically found that "the pattern of racketeering activity here is limited to the

alleged acts of witness retaliation and witness tampering" which were "squarely directed at

Plaintiff." *Opinion and Order* [Doc. #84], p. 29. In the July 17, 2009 Opinion and Order on

reconsideration [Doc. #98], Judge Borman noted that "[i]ncluding...Reddy Ice...as part of the

RICO enterprise does not alter the pattern of racketeering activity and proximate cause finding"

of his previous order, and that the purpose of the RICO enterprise "was to boycott Plaintiff from

employment in the packaged ice industry...Thus,...it remains squarely directed at Plaintiff."

*Opinion and Order Granting Reconsideration*, pp. 8-9. And, as noted above, he ruled that the

Court could not consider allegations of the market allocation scheme prior to February 17, 2005,

due to Plaintiff's waiver.

Thus, placing Judge Borman's findings in the context of the *H.J. Inc.* test, the purpose of

the alleged RICO enterprise in this case was to blackball the Plaintiff from employment in the

packaged ice industry, which differentiates it from the purpose of the market allocation scheme.

The victims of the two schemes are different as well. In this case, the alleged employment-

-4-

boycott RICO enterprise is "squarely directed at Plaintiff." The victims of the market allocation scheme were direct and indirect purchasers of packaged ice. Obviously, the methodology of the two schemes differed, as did the results. The present case is therefore similar to *Vild v. Visconsi, supra*, where the Sixth Circuit identified two types of alleged predicate acts: those directed at the plaintiff, and those directed at others, "including ultimate purchasers of real estate interests." *Id.*, 956 F.2d at 566. Finding that the latter conduct did not meet the relationship test for predicate acts, the Court held that "[e]ven if the predicates within each of the two types of conduct may be somehow interrelated, the two types of alleged conduct are not related within the meaning of RICO." *Id*.

Indeed, the Sixth Circuit has already recognized the fundamental distinction between the conspiracy to blackball the Plaintiff from employment, and the conspiracy to allocate prices in the packaged ice market. In *In re McNulty*, 597 F.3d 344 (6th Cir. 2010), this Plaintiff sought recovery from Arctic Glacier, which had pled guilty to violating the Sherman Act, pursuant to the Crime Victims' Rights Act, 18 U.S.C. §3771. In rejecting the Plaintiff's claim that he was a victim of the market allocation conspiracy, the Court stated, "McNulty's firing and blackballing from the industry, if proved, are ancillary to the actions involved in forming a conspiracy and restraining interstate commerce." *Id*. at 352.

While the market allocation conspiracy might in a very general sense be somehow or somewhat connected to the alleged RICO scheme to blackball the Plaintiff, it falls far short of meeting the relationship test of *H.J. Inc*., and cannot be considered a predicate act for purposes of this case. Thus, Plaintiff's discovery requests for documents related to the underlying conspiracy must be denied as irrelevant, even under the broad scope of Rule 26. To grant Plaintiff this discovery would also circumvent Judge Borman's previous orders in this case.[2]

---

[2] Because it is clear that the market allocation conspiracy does not qualify as a predicate act under the relationship test, it is not necessary to decide whether a RICO plaintiff is required to prove two at least two predicate acts against *each* defendant. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 724, n.2 (6th Cir. 2006), where the Court likewise sidestepped this question.

The Court therefore sustains Reddy Ice's and Home City's general objections, and denies the motions to compel as to any requests for documents relating to the market allocation scheme.[3]

## B.   Other Document Requests

### 1.   Reddy Ice

Request No. 6

Plaintiff has requested documents from Reddy Ice relating to Ben Key (Request No.6), Reddy Ice's former vice-president of sales and marketing.  Plaintiff states in the Joint List [Doc. #166] that "Arctic Glacier promised Mr. McNulty a promotion to Vice President of Sales, the same position held by Mr. Key at Reddy Ice, and the performance and compensation of Mr. Key is relevant to Mr. McNulty's damages from being boycotted by the industry.  Documents related to his suspension are relevant to Mr. McNulty's allegation of mail and wire fraud, and to the existence of a conspiracy between Reddy Ice and Arctic Glacier." However, while the compensation or performance of comparable employees at Arctic Glacier, by whom Plaintiff was employed, might have relevance, Plaintiff was never employed by Reddy Ice. Moreover, as Defendant points out, the two companies differ in size, geographical scope and volume of sales. Thus, information about Mr. Key's employment is not relevant to Plaintiff's claim for damages in this case.  In addition, as discussed above, Mr. Key's involvement in the market allocation conspiracy is not relevant to the distinct RICO conspiracy to boycott Plaintiff's employment in the packaged ice industry.

Request No. 7

---

[3] In Motion #143 (Reddy Ice), this includes Plaintiff's document requests 11 and 22-25. In Motion #144 (Home City Ice), this includes Plaintiff's document requests 2-6, 11, 13, and 23-26. However, I note that with respect to Home City's specific objections, it states in its response to these requests that "it will produce non-privileged documents for inspection and copying at a mutually agreeable date and time." *See Plaintiff's Motion [Docket #144], Exhibit 3.* In addition, with respect to Request No. 11–grievances or complaints from current or former employees regarding communications with other packaged ice companies–Home City "states that upon information and belief no such documents exist." *Id.*

Plaintiff requests "documents sufficient to show employees who left (other than through retirement), or were terminated from, Reddy Ice and the reasons for each individual's leaving, or termination from, Reddy Ice." This request is exceedingly overbroad and burdensome. Reddy Ice indicates that it has searched over a million documents, has produced all documents that refer to Plaintiff McNulty, and that those documents are minimal. Reddy Ice indicates that to accede to this request, it would have to search the records of over 2,900 employees. Moreover, Plaintiff has offered no basis, other than speculation, that Reddy Ice terminated other employees under circumstances similar to his. The burden of this request far outweighs any realistic benefit to Plaintiff. Fed.R.Civ.P. 26(b)(C)(iii); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Request No. 8

Here, Plaintiff requests "all documents related to the hiring of packaged ice salespersons from August 1, 2005 to March 31, 2006." While Defendant's objections as to relevance and burden are well-taken, Reddy Ice also states that "it did not hire any sales personnel within the specified time frame, other than commissioned delivery drivers to whom McNulty presumably would not compare himself." The request to produce must therefore also be denied as moot.

Request No. 9, No. 10 and No. 12

Plaintiff requests information as to compensation and job performance of Reddy Ice executives or salespersons. While Arctic Glacier, Plaintiff's employer, was ordered to produce similar material, I again note that Plaintiff did not work for Reddy Ice. The requested documents therefore lack relevance, and would place an unnecessary burden on Defendant.

Request No. 13

Plaintiff requests "all documents constituting or relating to communications between you and any other packaged ice manufacturer concerning the employment or potential employment of any individual or groups of individuals." As phrased, this request is extremely overbroad and burdensome. In addition, given the small number of documents that refer at all to Mr. McNulty

-7-

(again, the alleged RICO enterprise is one "squarely directed at Plaintiff"), delving into a mass of communications involving employment of *any* individual would be unlikely to lead to the discovery of admissible evidence.

Request No. 15

Plaintiff seeks "all communications with third parties relating to this case, including communications with potential witnesses."  In the Joint List, Plaintiff states, "This includes, for example, any informal discovery obtained by Reddy Ice from third parties, and documents obtained in response to any subpoenas that Reddy Ice issues."  However, Reddy Ice states that it has neither obtained informal discovery from third parties nor subpoenaed such information, adding that it will produce such documents if and when it obtains them.  Therefore, this request must be denied as moot.

### 2.    Home City Ice

Without waiving its objections, Home City has agreed to produce much of the requested material. *See* fn. 3, *supra*.  As discussed above, those requests that pertain to the market allocation conspiracy will be denied. Other specific requests, as set forth in the Joint List [Doc. #167], are as follows:[4]

Request No. 7

Plaintiff requests information of Home City employees who left or were terminated from their employment.  For the reasons discussed with regard to similar requests to Reddy Ice, these requests will be denied.

Request Nos. 8-10, 12 and 16

Plaintiff requests documents relating to the hiring, compensation and job performance of Home City executives and sales personnel, and Home City's hiring practices.  For the reasons discussed with regard to similar requests to Reddy Ice, these requests will be denied.

---

[4] Although Request No. 19 (Home City's document retention policies) is included as an unresolved issue, Home City states "that it will produce for inspection and copying a copy of its Document Retention Policy at a mutually agreeable date and time."

<u>Request No. 15</u>

Plaintiff seeks "all communications with third parties relating to this case, including communications with potential witnesses."  This request is vague and overly broad, and appears to request information that would be protected by work product or attorney-client privilege. Plaintiff may be entitled to some third party communications, e.g., information acquired by informal discovery or subpoena (see Reddy Ice's response to this request), but as phrased, the request will be denied, without prejudice to a more carefully tailored request.

## IV.   CONCLUSION

Plaintiff Martin McNulty's Motion to Compel Reddy Ice to Produce Documents [Doc. #143] is DENIED.

Plaintiff Martin McNulty's Motion to Compel Home City Ice to Produce Documents [Doc. #144] is DENIED.


SO ORDERED.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 6, 2011

_____

## CERTIFICATE OF SERVICE

I hereby certify on January 6, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 6, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217