UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN G. MCNULTY,

    Plaintiff,

v.

REDDY ICE HOLDINGS, INC.,

et al.,
_____/

Case No. 08-cv-13178

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate Judge

OPINION AND ORDER
(1) DENYING PLAINTIFF'S JANUARY 19, 2011 OBJECTIONS TO THE MAGISTRATE JUDGE'S OPINION AND ORDERS ON PRODUCTION OF DOCUMENTS (DKT. NO. 207),
(2) AFFIRMING THE MAGISTRATE JUDGE'S JANUARY 6, 2011 AND JANUARY 10, 2011 OPINIONS AND ORDERS (DKT. NOS. 203 AND 205) AND
(3) DENYING AS MOOT PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND TO RESCHEDULE CORBIN DEPOSITION (DKT. NO. 195) AND PLAINTIFF'S MOTION TO COMPEL ARCTIC GLACIER TO PRODUCE DOCUMENTS (DKT. NO. 196)

Before the Court are Plaintiff's January 19, 2011 Objections to Magistrate Judge R. Steven Whalen's January 6, 2011 and January 10, 2011 Opinions and Orders on Production of Documents. (Dkt. No. 207.) Defendants Reddy Ice Holdings, Inc. and Reddy Ice Corporation ("Reddy Ice"), Arctic Glacier Income Fund, Arctic Glacier Inc. and Arctic Glacier International, Inc. ("Arctic Glacier") and Home City Ice Company, Inc. ("Home City") filed a joint response to Plaintiff's Objections. (Dkt. No. 210). Home City filed a separate response to Plaintiff's Objections on issues pertaining solely to Home City. (Dkt. No. 209.) For the reasons that follow, the Court AFFIRMS the Magistrate Judge's rulings.

1

**I.     PLAINTIFF'S OBJECTIONS**

Plaintiff objects to the following two holdings made by Magistrate Judge Whalen in his rulings on Plaintiff's motion to compel Reddy Ice and Home City to produce documents (Dkt. No. 203) and on Arctic Glacier's motion for a protective order (Dkt. No. 205):

> 1. "[T]hat the market allocation conspiracy was not sufficiently related to the allegations in this case, and that Plaintiff shall be precluded from taking discovery that relates solely to the market allocation conspiracy."
>
> 2. "[T]hat documents relating to the hiring, compensation, and job performance of Home City executives and sales personnel were not relevant to this case because Mr. McNulty did not work for Home City."

(Dkt. No. 207, Pl.'s Objs. 1-2.)

**II.    STANDARD OF REVIEW**

A party may object to a magistrate judge's non-dispositive orders. Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). The standard of review under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a) dictates that a magistrate judge's non-dispositive pretrial orders shall not be disturbed unless "found to be clearly erroneous or contrary to law." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The "clearly erroneous" standard mandates that the district court affirm the magistrate judge's decision unless, on the entire evidence, it "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

**III.   ANALYSIS**

**A.     Plaintiff is not Entitled to Wide Ranging Discovery Relating Solely to the Market Allocation Conspiracy**

Plaintiff's claims in this case relate solely to his allegations that he was terminated from his employment with Arctic Glacier Inc. because he refused to participate in an alleged unlawful market

allocation scheme in the packaged ice industry. Plaintiff claims that following his refusal to participate in the unlawful scheme, he was blackballed in the industry and was unable to find employment. Plaintiff alleges that Defendants engaged in the criminal acts of witness tampering and witness retaliation in their efforts to thwart Plaintiff's cooperation with a government investigation into the packaged ice industry and to punish Plaintiff for cooperating in that investigation. That investigation resulted in several guilty pleas by some of the Defendants in this case to violating the antitrust laws by entering into a market allocation conspiracy in Southeastern Michigan. The government has now closed the criminal investigation that resulted in those guilty pleas.

Several civil antitrust and securities lawsuits, which allege a nationwide antitrust conspiracy among these Defendants in the packaged ice industry, have been filed and are currently pending in this Court and in Canada. At an earlier stage in this litigation, Plaintiff made clear to the Court his position that this case, which involves Plaintiff's claims of witness tampering and witness retaliation, is factually and legally distinct from the antitrust and securities lawsuits. For example, at the April 2, 2009 hearing on Defendants' motions to dismiss, the following colloquy transpired between the Court and counsel for Plaintiff, Mr. Daniel Low:

> The Court: When you say he's just seeking to recover for damages to him from the boycott and not the market allocation, then are you saying that the Court, in terms of focusing on his claims here, should just focus on his individual situation with regard to the boycott of his ability to get a job and not focus on the market allocation, which is a separate issue?
>
> Mr. Low: Correct. He's not seeking to recover for the overcharges to consumers.
>
> The Court: Okay.

(Dkt. No. 90, Transcript, April 2, 2009 Hearing, 29.)

Several months later, in a Joint Rule 26(f) Report, Plaintiff again reiterated his intent to

3

distance himself from the market allocation claims in the antitrust and securities cases. Rejecting Defendants' offer to coordinate discovery in this case with discovery in the antitrust multidistrict litigation, Plaintiff made clear that those nationwide antitrust claims had no legal significance to his claims in this case:

> Plaintiff opposes Defendants' proposal to delay discovery in this individual RICO case to coordinate it with discovery in the multi-district class action antitrust cases and the multi-district securities class action cases. As a RICO lawsuit mainly related to witness tampering and retaliation, this case involves distinct legal and factual issues from the antitrust and securities cases.

(Dkt. No. 107, August 14, 2009 Joint Rule 26(f) Report, 5.)[1] Plaintiff now retreats from this position and seeks to discover all documents from all Defendants which relate solely to the market allocation conspiracy that is the subject of the antitrust and securities cases.

In its May 29, 2009 Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, this Court expressly held, discussing the proximate cause element of Plaintiff's RICO claim, that "the pattern of racketeering activity here is limited to the alleged acts of witness retaliation and witness tampering." (Dkt. No. 84, May 29, 2009 Opinion and Order, p. 29.) On July 17, 2009, the Court issued its Opinion and Order granting Plaintiff's motion for reconsideration of the Court's prior ruling on the existence of a RICO enterprise. (Dkt. No. 98, July 17, 2009 Opinion and Order Granting Plaintiff's Motion for Reconsideration.) In that subsequent Opinion, which reversed the Court's ruling on the finding of an enterprise, the Court expressly stated that its modified ruling as to the RICO enterprise "does not alter the pattern of racketeering and proximate

---

[1] Rejecting Plaintiff's attempt to be recognized as a crime victim of the alleged antitrust conspiracy, the Sixth Circuit also recognized that Plaintiff's claims that he was fired and blackballed are legally distinct from the claims involved in the antitrust investigation: "McNulty's firing and blackballing from the industry, if proved, are ancillary to the actions involved in forming a conspiracy and restraining interstate commerce." *In re Martin McNulty*, 597 F.3d 344, 352 (6th Cir. 2010).

cause findings." Accordingly, the Court finds that the Magistrate Judge's ruling that "the market allocation conspiracy . . . cannot be considered a predicate act for purposes of this case," was not clearly erroneous or contrary to law. The Court concludes that the Magistrate Judge's holding that Plaintiff, therefore, is precluded from engaging in discovery solely related to the alleged market allocation scheme was not clearly erroneous or contrary to law.

Plaintiff argues that he must be permitted to discover all documents related to the underlying antitrust conspiracy in order to provide context for his witness tampering and retaliations claims and to demonstrate the motive and opportunity for the Defendants to commit the crimes of witness tampering and retaliation. Whatever marginal relevance such evidence may have to proving context and/or motive and opportunity in this case, the Court rejects Plaintiff's attempt to turn this case into a mini-trial on the merits of the nationwide conspiracy claims that are the subject of the antitrust and securities class action lawsuits. Plaintiff has available to him the Plea Agreements of Arctic Glacier and Home City as well as the Plea Agreements of Mssrs. Corbin, Larson and Cooley. Further, Plaintiff was cross-noticed in this case and given the opportunity to attend and participate in the deposition of Keith Corbin, and to be privy to all of the documents produced in connection with that deposition. While Plaintiff alleges that he was unable to attend and participate in the Corbin deposition in November due to a scheduling conflict, he has received a copy of that deposition transcript, as well as all of the exhibits which were marked at the deposition.[2] Further, the Court has

---

[2] It is unclear to the Court whether Plaintiff has received all of the documents that were produced in connection with and in advance of the Corbin deposition, or if Plaintiff has only received those documents that were marked as exhibits at the deposition. Because the parties have indicated to the Court that certain documents were produced to certain other parties in other cases in advance of, and specifically related to, the Corbin deposition, the Court finds that Plaintiff should receive copies of all documents produced by any of the Defendants in the instant case in connection with Mr. Corbin's deposition which was cross-noticed in this case.

5

authorized Plaintiff to re-notice the deposition of Mr. Corbin, and in fact has urged Plaintiff to do so soon, given Mr. Corbin's failing health. Plaintiff has not demonstrated to the Court at this point a need for further discovery into the business practices of the Defendants as they relate to the market allocation conspiracy allegations that are the subject of admittedly factually and legally distinct litigation.

The Court concludes that the Magistrate Judge's holding "that the market allocation conspiracy was not sufficiently related to the allegations in this case, and that Plaintiff shall be precluded from taking discovery that relates solely to the market allocation conspiracy" was not clearly erroneous or contrary to law.

### B. Plaintiff's Motion to Compel Home City to Produce Documents Relating to the Hiring, Compensation and Job Performance of Home City Executives and Sales Personnel Is Moot

The Court concludes that Plaintiff's second objection, to that portion of the Magistrate Judge's ruling "that documents relating to the hiring, compensation, and job performance of Home City executives and sales personnel were not relevant to this case because Mr. McNulty did not work for Home City" is now moot. In its response to Plaintiff's objection to this ruling, Home City states that it has agreed to produce, and has produced, all non-privileged documents responsive to the requests that relate to these topics (Requests No. 9-10, and 12) notwithstanding the Magistrate Judge's ruling that the documents were not relevant. (Dkt. No. 203, 8.) Accordingly, Plaintiff's second objection is moot.

### III. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Magistrate Judge's January 6, 2011

Opinion and Order Re: Plaintiff's Motion to Compel Reddy Ice to Produce Documents and Motion to Compel Home City to Produce Documents (Dkt. No. 203), and AFFIRMS the Magistrate Judge's January 10, 2011 Order Granting Arctic Glacier's Motion for a Protective Order (Dkt. No. 205).

The Court further DENIES AS MOOT Plaintiff's Motion for Protective Order and to Reschedule Corbin Deposition (Dkt. No. 195) and Plaintiff's Motion to Compel Arctic Glacier to Produce Documents (Dkt. No. 196).[3]

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 22, 2011.

S/Denise Goodine
Case Manager

---

[3] These two motions have been addressed by this Court's January 7, 2011 Order Regarding Plaintiff's Request for Corbin Deposition (Dkt. No. 204) and/or the Magistrate Judge's Opinions and Orders (Dkt. Nos. 203 and 205), which the Court has now affirmed. To the extent that the parties believe that the matters raised in these two motions have not been fully resolved, the parties are strongly encouraged to conclude these matters without the Court's involvement based upon the Magistrate Judge's rulings which the Court affirms today.