File No. CI 12-01-76323

## THE QUEEN'S BENCH
### Winnipeg Centre

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PROPOSED PLAN OF COMPROMISE OR ARRANGEMENT WITH RESPECT TO ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC. and the ADDITIONAL APPLICANTS LISTED IN SCHEDULE "A" HERETO

(collectively, the "APPLICANTS")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c C-36, AS AMENDED

---

## SANCTION ORDER

---

**KEVIN P. MCELCHERAN PROFESSIONAL CORPORATION**
120 Adelaide Street West
Suite 420
Toronto ON M5H 1T1

**Kevin McElcheran**
Tel: 416.855.0444
Email: Kevin@mcelcheranAdr.com

**MCCARTHY TÉTRAULT LLP**
Suite 5300, Box 48
Toronto Dominion Bank Tower
Toronto ON M5K 1E6

**Heather Meredith**
Tel: 416.601.8342
Email: hmeredith@mccarthy.ca

**AIKINS, MACAULAY THORVALDSON LLP**
30th Floor —360 Main Street
Winnipeg, MB R3C 4G1

**G. Bruce Taylor**
Tel: 204.957.4669
Fax: 204.957.4218

**J.J. Burnell**
Tel: 204.957.4663
Fax: 204.957.4285

File No. CI 12-01-76323

## THE QUEEN'S BENCH

### Winnipeg Centre

THE HONOURABLE          )  FRIDAY, THE 5TH

)

MADAM JUSTICE SPIVAK     )  DAY OF SEPTEMBER, 2014

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PROPOSED PLAN OF COMPROMISE OR ARRANGEMENT WITH RESPECT TO ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC. and the ADDITIONAL APPLICANTS LISTED IN SCHEDULE "A" HERETO

(collectively, the "APPLICANTS")

### ORDER
### (Plan Sanction)

**THIS MOTION** made by the Applicants for an Order (the "**Sanction Order**"): (i) approving and sanctioning the amended and restated consolidated plan of compromise or arrangement dated August 26, 2014 (and as it may be further amended, restated, modified or supplemented from time to time in accordance with its terms) (the "**Plan**"), attached as Schedule "B" to this Sanction Order; and (ii) extending the stay of proceedings (the "**Stay Period**") under the Order of the Honourable Madam Justice Spivak made February 22, 2012 (the "**Initial Order**") was heard this day at the Law

Courts Building at 408 York Avenue, in the City of Winnipeg, in the Province of Manitoba.

ON READING the Notice of Motion, the Sixteenth Report of the Monitor dated August 7, 2014 (the "**Sixteenth Report**") and the Seventeenth Report of the Monitor dated August 26, 2014 (the "**Seventeenth Report**"), and on hearing the submissions of counsel for the Applicants and Glacier Valley Ice Company, L.P. (together, the "**Arctic Glacier Parties**"), counsel for the Monitor, counsel for the Trustees of Arctic Glacier Income Fund, counsel for certain Management claimants, and counsel for the United States Department of Justice as well as representatives of Stone Lion Capital Partners LP and Indaba Capital Mangement LLC, no one appearing for any other party although duly served as appears from the Affidavit of Service, filed:

**DEFINITIONS**

1.        **THIS COURT ORDERS** that any capitalized terms not otherwise defined in this Sanction Order shall have the meanings ascribed to them in the Plan.

**SERVICE**

2.        **THIS COURT ORDERS** that the time for service of this Motion and the Sixteenth and Seventeenth Report be and is hereby abridged and validated, such that this Motion is properly returnable today and hereby dispenses with further service thereof.

**THE CREDITORS' MEETING AND THE UNITHOLDERS' MEETING**

3.        **THIS COURT ORDERS AND DECLARES** that there has been good and sufficient service and delivery of the Meeting Order and the documents referred to in the Meeting Order, including the Notice to Affected Creditors and Notice to Unitholders.

4.        **THIS COURT DECLARES** that the Creditors' Meeting was deemed to have been duly called and held in accordance with the Orders of this Court in the CCAA Proceedings, including the Meeting Order.

5.        **THIS COURT ORDERS AND DECLARES** that the Unitholders' Meeting was duly called and held in accordance with the Orders of this Court in the CCAA Proceedings, including the Meeting Order.

**MONITOR'S ACTIVITIES AND REPORTS**

6.        **THIS COURT ORDERS** that the Sixteenth Report and the Seventeenth Report, and the activities described therein, are hereby approved.

7.        **THIS COURT ORDERS** that the activities and conduct of the Monitor and the CPS in relation to the Arctic Glacier Parties and the CCAA Proceedings, and of the Monitor in conducting and administering the Unitholders' Meeting on August 11, 2014 (as more particularly described in the Seventeenth Report) be and are hereby ratified and approved.

**SANCTION OF THE PLAN**

8.        **THIS COURT ORDERS AND DECLARES** that:

(a)     pursuant to the Meeting Order, the Plan has been approved unanimously by the Affected Creditors;

(b)     the Plan has been approved by the Required Unitholder Majority, in conformity with the Meeting Order;

(c)     the activities of the Arctic Glacier Parties have complied with the provisions of the CCAA and the Orders of this Court made in the CCAA Proceedings in all respects;

(d)     the CCAA Court is satisfied that the Arctic Glacier Parties have acted, and are acting, in good faith and with due diligence, and have complied with the provisions of the CCAA and the Orders of this Court made in the CCAA Proceedings in all respects;

(e)     the CCAA Court is satisfied that the Arctic Glacier Parties have not done or purported to do anything that is not authorized by the CCAA; and

(f)     the Plan, all terms and conditions thereof, and the matters and the transactions contemplated thereby, are fair and reasonable.

9.      **THIS COURT ORDERS AND DECLARES** that the Plan (including, without limitation, the transactions, arrangements, reorganizations, assignments, cancellations, compromises, settlements, extinguishments, discharges, injunctions and releases set out therein) is hereby sanctioned and approved pursuant to the CCAA.

**PLAN IMPLEMENTATION**

10.        **THIS COURT ORDERS** that at the Effective Time, the Plan and all associated steps, compromises, settlements, extinguishments, cancellations, transactions, assignments, injunctions, arrangements, releases, reorganizations and discharges effected thereby shall be binding and effective upon, and shall enure to the benefit of, the Arctic Glacier Parties; all Affected Creditors; the Directors, Officers, Unitholders and Trustees; the Releasees; and all other Persons named or referred to in, or subject to, the Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns.

11.        **THIS COURT ORDERS** that at the Effective Time, the Plan and all associated steps, compromises, settlements, extinguishments, cancellations, transactions, assignments, arrangements, injunctions, releases, reorganizations and discharges effected thereby shall be, and are hereby deemed to be:

(a)     implemented, in accordance with the provisions of the Plan; and

(b)     effected in the sequential order and at the times contemplated by Section 8.3 of the Plan, without any further act or formality, on the Plan Implementation Date beginning at the Effective Time.

12.        **THIS COURT ORDERS** that the Arctic Glacier Parties, the Monitor and the CPS, as the case may be, are hereby authorized and directed to take all steps and actions necessary or appropriate to implement the Plan in accordance with and subject to its terms and conditions, and enter into, adopt, execute, deliver, complete, implement and consummate all of the steps, compromises, settlements, transactions, assignments, arrangements, reorganizations, distributions, payments, deliveries, allocations,

instruments, agreements and releases contemplated by, and subject to the terms and conditions of, the Plan, and all such steps and actions are hereby approved. Further, to the extent not previously given, all necessary approvals to take such actions shall be and are hereby deemed to have been obtained from the Directors, Officers, or Trustees, as applicable, including the deemed passing by any class of shareholders or unitholders of any resolution or special resolution, and no shareholders' agreement or agreement between a shareholder and another Person limiting in any way the right to vote shares held by such shareholder or shareholders with respect to any of the steps contemplated in the Plan shall be effective or have an force or effect.

13.     **THIS COURT ORDERS** that on and after the Plan Implementation Date, the Monitor shall be at liberty to engage such Persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under the Plan, the Sanction Order or any other Order of this Court and to facilitate the completion of the CCAA Proceedings, and that the fees and costs incurred in respect of such engagement shall constitute an Administrative Reserve Cost within the meaning of the Plan.

14.     **THIS COURT ORDERS** that none of the Arctic Glacier Parties, the Monitor and/or the CPS shall incur any liability as a result of acting in accordance with the terms of the Plan or this Sanction Order, save and except for any gross negligence or wilful misconduct on their parts.

15.     **THIS COURT ORDERS AND DECLARES** that the Applicants, the CPS and the Monitor are hereby authorized and empowered to exercise all consent and

approval rights provided for in the Plan in the manner set forth in the Plan, whether before, after or on the Plan Implementation Date.

16.         **THIS COURT ORDERS** that the Monitor, the Transfer Agent and any other Person required to make any distributions, payments, deliveries or allocations or take any steps or actions related thereto pursuant to the Plan are hereby authorized and directed to complete such distributions, payments, deliveries or allocations and to take any such related steps or actions, as the case may be, in accordance with the terms of the Plan, and such distributions, payments, deliveries and allocations, and the steps and actions related thereto, are hereby approved.

17.         **THIS COURT ORDERS** that subject to payment of any amounts secured by the Charges, each of the Charges shall be terminated, discharged and released upon the filing by the Monitor with this Court of the certificate contemplated by Section 8.2 of the Plan.

**EFFECT OF PLAN IMPLEMENTATION**

18.         **THIS COURT ORDERS** that, from and after the Plan Implementation Date, all Persons shall be deemed to have waived any and all defaults of the Arctic Glacier Parties then existing or previously committed by the Arctic Glacier Parties or caused by the Arctic Glacier Parties or any of the provisions of the Plan or this Sanction Order or non-compliance with any covenant, warranty, representation, term, provision, condition or obligation, express or implied, in any contract, agreement, mortgage, security agreement, indenture, trust indenture, loan agreement, commitment letter,

agreement for sale, real property lease, personal property lease or other agreement, written or oral, and any amendments or supplements thereto, existing between such Person and the Arctic Glacier Parties. Any and all notices of default, acceleration of payments and demands for payments under any instrument, or other notices, including without limitation, any notices of intention to proceed to enforce security, arising from any of such aforesaid defaults shall be deemed to have been rescinded and withdrawn.

19.     **THIS COURT ORDERS** that, as of the Plan Implementation Date, each Affected Creditor and Unitholder shall be deemed to have consented and agreed to all of the provisions of the Plan in their entirety and, in particular, each Affected Creditor and Unitholder shall be deemed:

(a)     to have granted, executed and delivered to the Monitor and the Arctic Glacier Parties all documents, consents, releases, assignments, waivers or agreements, statutory or otherwise, required to implement and carry out the Plan in its entirety; and

(b)     to have agreed that if there is any conflict between the provisions of the Plan and the provisions, express or implied, of any agreement or other arrangement, written or oral, existing between such Affected Creditor or Unitholder and the Arctic Glacier Parties as of the Plan Implementation Date, the provisions of the Plan take precedence and priority, and the provisions of such agreement or other arrangement shall be deemed to be amended accordingly.

20.     **THIS COURT ORDERS** that, subject to the Claims Procedure Order including the powers of the Monitor set out in paragraph 5 therein, any Affected Claim for which a Proof of Claim has not been filed by the Claims Bar Date or the DO&T Indemnity Claims Bar Date, as applicable, shall be forever barred and extinguished.

21.     **THIS COURT ORDERS** that, on the Plan Implementation Date, following completion of the steps in the sequence set forth in Section 8.3 of the Plan, all debentures, notes, bills of exchange, certificates, agreements, invoices and other instruments evidencing Affected Claims shall not entitle the holder thereof to any compensation or participation and shall be and are hereby deemed to be cancelled and shall be and are hereby deemed to be null and void, and the obligations of the Arctic Glacier Parties thereunder or in any way related thereto shall be satisfied and discharged.

22.     **THIS COURT ORDERS** that, pursuant to and in accordance with the Plan, any and all Affected Claims shall be forever compromised, discharged, settled and released, and the ability of any Person to proceed against the Arctic Glacier Parties in respect of or relating to any Affected Claims shall be forever barred, discharged, enjoined and restrained, and all proceedings in respect of such Affected Claims are hereby permanently stayed, subject only to (i) the right of Affected Creditors with Unresolved Claims to continue pursuing such Unresolved Claims in accordance with the Claims Procedure Order, the Claims Officer Order and the Plan; and (ii) the right of Affected Creditors to receive payments and distributions pursuant to the Plan.

**INTEREST**

23.        **THIS COURT ORDERS** that the rate of interest to be paid on each Proven Claim (other than the Deemed Proven Claims, the Canadian Direct Purchaser Proven Claim and the Indirect Purchaser Proven Claim) from and after the Claims Bar Date calculated until the Plan Implementation Date is 1.5%.

24.        **THIS COURT ORDERS** that the DOJ Claim shall include interest at the United States federal post-judgment interest rate of 0.34%, compounding annually until the date of payment of such DOJ Claim, as provided for in the *Stipulation and Order Among the Monitor, Debtors, and the United States Attorney's Office for the Southern District of Ohio Regarding March 2010 Criminal Judgment of Arctic Glacier International Inc.*, dated July 17, 2012, as entered by the U.S. Bankruptcy Court in the Chapter 15 Proceedings.

25.        **THIS COURT ORDERS** that the Direct Purchaser Claim shall include interest at the rate of 0.3% calculated commencing on April 30, 2011 until the Plan Implementation Date.


**STAY EXTENSION**

26.        **THIS COURT ORDERS** that the Stay Period is hereby extended until November 28, 2014.

27.        **THIS COURT ORDERS** that any and all Persons shall be and are hereby stayed from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, including, without limitation, administrative hearings and orders, declarations or assessments, commenced taken or proceeded with or that may be

commenced, taken or proceeded with against any Releasee in respect of all Claims and any matter which is released pursuant to the Plan.

## RELEASES AND INJUNCTIONS

28.         **THIS COURT ORDERS AND DECLARES** that the releases contemplated by the Plan are approved.

29.         **THIS COURT ORDERS** that all Persons shall be permanently and forever barred, estopped, stayed and enjoined, from and after the Effective Time, in respect of any and all Releasees, from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Releasees; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against the Releasees or their respective property; (iii) commencing, conducting or continuing in any manner, directly or indirectly, any action, suit or demand, including without limitation by way of contribution or indemnity or other relief, in common law or in equity, for breach of trust or breach of fiduciary duty, under the provisions of any statute or regulation, or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any Person who makes such a claim or might reasonably be expected to make such a claim, in any manner

or forum, against one or more of the Releasees; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any lien or encumbrance of any kind against the Releasees or their respective property; or (v) taking any actions to interfere with the implementation or consummation of the Plan; provided, however, that the foregoing shall not apply to the enforcement of any obligations under the Plan.

**ORDERS IN THE CCAA PROCEEDINGS**

30.        **THIS COURT ORDERS** that the Orders made in the CCAA Proceedings shall continue in full force and effect in accordance with their respective terms, except to the extent that such Orders are varied by or are inconsistent with this Sanction Order or any further Order of this Court.

**THE MONITOR AND CHIEF PROCESS SUPERVISOR**

31.        **THIS COURT ORDERS AND DECLARES** that the Monitor and the CPS have satisfied all of their obligations up to and including the date of this Sanction Order, and that: (i) in carrying out the terms of this Sanction Order and the Plan and in performing their respective duties as Monitor and CPS, as applicable, in the CCAA Proceedings, the Monitor and the CPS shall have all the protections given to each of them by the CCAA, the Initial Order, the Meeting Order, the Claims Procedure Order and any other Order of this Court and as officers of the Court, including the stay of proceedings in their favour; (ii) the Monitor and the CPS shall incur no liability or obligation for any act or omission as a result of carrying out the provisions of this Sanction Order and the Plan and in performing their duties as Monitor and CPS, respectively, in the CCAA

Proceedings, save and except for any gross negligence or wilful misconduct on their parts; and (iii) the Monitor and the CPS shall not be liable for any claims or damages resulting from any errors or omissions in the books and records of the Arctic Glacier Parties and any information provided by the Arctic Glacier Parties, including with respect to reliance thereon by any Person, save and except for any gross negligence or wilful misconduct on the Monitor's or CPS's part, as the case may be. Subject to the foregoing, and in addition to the protections in favour of the Monitor under the CCAA, and the protections in favour of the Monitor and the CPS as set out in the Orders of this Court, any claims against the Monitor or the CPS in connection with the performance of their respective duties are hereby released, stayed, extinguished and forever barred and the Monitor and the CPS shall have no liability in respect thereof.

32.     **THIS COURT ORDERS** that that the Monitor and the CPS shall not incur any liability under the Tax Statutes as a result of the completion of the steps or transactions contemplated by the Plan, including in respect of its making any payments or distributions ordered or permitted under the Plan or the Sanction Order and including any steps or transactions contemplated by Sections 8.3 or 8.4 of the Plan, and that the Monitor and the CPS are released, remised and discharged from any claims against them under or pursuant to the Tax Statutes or otherwise at law, arising in respect of the completion of the steps or transactions contemplated by the Plan, including in respect of making any payments or distributions ordered or permitted under the Plan or the Sanction Order and including any steps or transactions contemplated by Sections 8.3 or 8.4 of the Plan, and that any claims of such a nature are forever barred and extinguished

33.     **THIS COURT ORDERS** that no action or other proceeding shall be commenced against the Monitor or the CPS in any way arising from or related to their respective capacities or conduct as Monitor or CPS, except with prior leave pursuant to an Order of this Court made on prior written notice to the Monitor and the CPS and provided any such Order granting leave includes a term granting the Monitor or the CPS, as applicable, security for its costs and the costs of its counsel in connection with any proposed action or proceeding, such security to be on terms this Court deems just and appropriate. In addition, this Court orders that it has exclusive jurisdiction over any action or other proceeding commenced against the Monitor or the CPS in any way arising from or related to their respective capacities or conduct as Monitor or CPS.

34.     **THIS COURT ORDERS AND DECLARES** that, in addition to the Monitor's prescribed rights under the CCAA, and the powers granted by this Court to the Monitor and the CPS, as the case may be, the powers granted to the Monitor and the CPS are expanded as may be required, and the Monitor and the CPS are empowered and authorized before, on or after the Plan Implementation Date, to take such additional actions and execute such documents, in the name of and on behalf of the Arctic Glacier Parties, as the Monitor and the CPS consider necessary or desirable in order to perform their respective functions and fulfill their respective obligations under the Plan, the Sanction Order and any Order of this Court in the CCAA Proceedings and to facilitate the implementation of the Plan and the completion of the CCAA Proceedings, including to: (i) take measures to attempt to satisfy or waive the conditions precedent under the Plan; (ii) administer and distribute the Available Funds; (iii) establish, hold, administer and distribute the Administrative Costs Reserve, the Insurance Deductible Reserve, the

Unresolved Claims Reserve, the Affected Creditors' Distribution Cash Pool and the Unitholders' Distribution Cash Pool; (iv) resolve any Unresolved Claims; (v) effect payments in respect of Proven Claims to Affected Creditors and effect distributions to the Transfer Agent in respect of distributions to be made to Unitholders; (vi) take such steps, if and as may be necessary, to address Excluded Claims in accordance with the Plan, the Claims Procedure Order and the Claims Officer Order; and (vii) take such steps as are necessary to effect the post-Plan Implementation Date steps and transactions set out in Section 8.4 of the Plan; and, in each case where the Monitor or the CPS, as the case may be, takes such actions or steps, they shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons including the Arctic Glacier Parties, and without interference from any other Person.

35.     **THIS COURT ORDERS** that on or following the Plan Implementation Date, the Monitor shall be and is hereby authorized and directed to make payments out of the Administrative Costs Reserve, on behalf of the Arctic Glacier Parties, in respect of the payment of Administrative Reserve Costs by way of cheque (sent by prepaid ordinary mail to the Monitor's last known address for such recipient Persons) or wire transfer (in accordance with wire transfer instructions, if provided by such recipient Persons to the Monitor at least three (3) Business Days prior to the payment date set by the Monitor).

36.     **THIS COURT ORDERS** that on or following the Plan Implementation Date, the Monitor shall be and is hereby authorized and directed to administer and make payments out of Insurance Deductible Reserve and Unresolved Claims Reserve pursuant to and in accordance with the Plan.

37.      **THIS COURT ORDERS** that all payments and distributions by or at the direction of the Monitor, the Transfer Agent, and any other Persons required to make payments or distributions, in each case on behalf of the Arctic Glacier Parties or Arctic Glacier Income Fund ("**AGIF**"), as applicable, under the Plan are for the account of the Arctic Glacier Parties or AGIF, as applicable, and the fulfillment of their obligations under Plan.

38.      **THIS COURT ORDERS** that on the Plan Implementation Date or on any Distribution Date, as the case may be, the Monitor shall be and is hereby authorized and directed to make distributions out of the Affected Creditors' Distribution Cash Pool, on behalf of the Arctic Glacier Parties, to each Affected Creditor in the amount of such Affected Creditor's Distribution Claim by way of cheque (sent by prepaid ordinary mail to the address for such Affected Creditor specified in the Proof of Claim filed by such Affected Creditor, as otherwise agreed between the Monitor and such Affected Creditor, or as directed in writing by such Affected Creditor).

39.      **THIS COURT ORDERS** that on the Plan Implementation Date or on any Distribution Date, as the case may be, the Monitor shall be and is hereby authorized and directed to make distributions out of the Unitholders' Distribution Cash Pool, on behalf of the Fund, to the Transfer Agent pursuant to and in accordance with the Plan.

40.      **THIS COURT ORDERS** that none of the Monitor, the CPS, the Trustees, the Arctic Glacier Parties, or any individuals related thereto shall incur any liability as a result of payments and distributions to the Unitholders, in each case on

behalf of AGIF, once such distribution or payment has been made by the Monitor to, and confirmation of receipt has been received by the Monitor from, the Transfer Agent.

41.     **THIS COURT ORDERS** that the Monitor and CPS are hereby authorized to, in the name of and on behalf of the Arctic Glacier Parties, prepare and file the Arctic Glacier Parties' tax returns based solely upon information provided by the Arctic Glacier Parties and on the basis that the Monitor and the CPS shall incur no liability or obligation to any Person with respect to such returns or related documentation.

42.     **THIS COURT ORDERS** that the Monitor is hereby authorized and directed to, on and after the Plan Implementation Date, (i) complete the claims process established in the Claims Procedure Order and Claims Officer Order; and (ii) take such further steps and seek such amendments to the Claims Procedure Order, Claims Officer Order or other Orders of this Court as the Monitor considers necessary or appropriate in order to fully determine, resolve or deal with any Claims.

43.     **THIS COURT ORDERS** that as of the Effective Time, the Monitor and the CPS shall be discharged and released from their respective duties, other than those obligations, duties and responsibilities (i) necessary or required to give effect to the terms of the Plan and this Sanction Order, (ii) in relation to the claims process and all matters relating thereto as set out in the Claims Procedure Order and the Claims Officer Order, and (iii) in connection with the completion by the Monitor and the CPS of all other matters for which they are respectively responsible in connection with the Plan or pursuant to the Orders of this Court made in the CCAA Proceedings.

44.         **THIS COURT ORDERS** that upon completion by the Monitor and the CPS of their duties in respect of the Arctic Glacier Parties pursuant to the CCAA and any Orders in the CCAA Proceedings, including, without limitation, the Monitor's and the CPS' duties in respect of the claims process and distributions made by the Monitor in accordance with the Plan, the Monitor may file with this Court a certificate of Plan termination stating that all of its duties and the duties of the CPS in respect of the Arctic Glacier Parties pursuant to the CCAA, the Plan and the Orders in the CCAA Proceedings have been completed and thereupon (i) Alvarez & Marsal Canada Inc. shall be deemed to be discharged from its duties as Monitor of the Arctic Glacier Parties and released from all claims relating to its activities as Monitor; and (ii) 7088418 Canada Inc., operating as Grandview Advisors shall be deemed to be discharged from its duties as the CPS of the Arctic Glacier Parties and released from all claims relating to its activities as CPS.

45.         **THIS COURT ORDERS** that to the extent that and at the time that the Monitor and the CPS are discharged pursuant to paragraph 43 or 44, as the case may be, any claims against the Monitor or the CPS in respect of their respective capacities or conduct in these CCAA Proceedings or the performance of their duties as Monitor or CPS, as applicable, are released, stayed, extinguished and forever barred and the Monitor and the CPS shall have no liability in respect thereof, save and except for any gross negligence or wilful misconduct on the Monitor's or the CPS' part.

**GENERAL PROVISIONS**

46.    **THIS COURT ORDERS** that the Arctic Glacier Parties, the CPS and the Monitor may apply to this Court for advice and direction in respect of any matters arising from or under the Plan.


**EFFECT, RECOGNITION AND ASSISTANCE**

47.    **THIS COURT ORDERS** that this Sanction Order shall have full force and effect in all provinces and territories in Canada and abroad and as against all Persons to whom it may apply.

48.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, or regulatory or administrative body having jurisdiction in Canada, the United States or elsewhere to give effect to this Sanction Order and to assist the Arctic Glacier Parties, the Monitor and their respective agents in carrying out the terms of this Sanction Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such Orders and to provide such assistance to the Arctic Glacier Parties and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Sanction Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Arctic Glacier Parties and the Monitor and their respective agents in carrying out the terms of this Sanction Order.

49.    **THIS COURT ORDERS** that each of the Arctic Glacier Parties and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, or regulatory or administrative body, wherever located, for the recognition of this Sanction Order and for assistance in carrying out the terms of this Sanction Order,

and that the Monitor is authorized and empowered to act as a representative in respect of the CCAA Proceedings for the purpose of having the CCAA Proceedings recognized in a jurisdiction outside Canada.

## Schedule "A"

### ADDITIONAL APPLICANTS

Arctic Glacier California Inc.

Arctic Glacier Grayling Inc.

Arctic Glacier Lansing Inc.

Arctic Glacier Michigan Inc.

Arctic Glacier Minnesota Inc.

Arctic Glacier Nebraska Inc.

Arctic Glacier Newburgh Inc.

Arctic Glacier New York Inc.

Arctic Glacier Oregon Inc.

Arctic Glacier Party Time Inc.

Arctic Glacier Pennsylvania Inc.

Arctic Glacier Rochester Inc.

Arctic Glacier Services Inc.

Arctic Glacier Texas Inc.

Arctic Glacier Vernon Inc.

Arctic Glacier Wisconsin Inc.

Diamond Ice Cube Company Inc.

Diamond Newport Corporation

Glacier Ice Company, Inc.

Ice Perfection Systems Inc.

ICEsurance Inc.

Jack Frost Ice Service, Inc.

Knowlton Enterprises, Inc.

Mountain Water Ice Company

R&K Trucking, Inc.

Winkler Lucas Ice and Fuel Company

Wonderland Ice, Inc.

Schedule "B"

Court File No. CI 12-01-76323

### THE QUEEN'S BENCH

### <u>Winnipeg Centre</u>

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF
A PROPOSED PLAN OF COMPROMISE OR
ARRANGEMENT WITH RESPECT TO ARCTIC GLACIER INCOME FUND, ARCTIC
GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC. and the ADDITIONAL
APPLICANTS LISTED ON SCHEDULE"A"HERETO

(collectively, the"APPLICANTS")

---

### AMENDED AND RESTATED CONSOLIDATED

### PLAN OF COMPROMISE OR ARRANGEMENT

concerning, affecting and involving

ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER
INTERNATIONAL INC., GLACIER VALLEY ICE COMPANY, L.P. and the
ADDITIONAL APPLICANTS LISTED ON SCHEDULE"A"HERETO

---

**August 26, 2014**

# TABLE OF CONTENTS

**Page**

ARTICLE 1   INTERPRETATION ................................................................ 2
   1.1   Definitions ................................................................ 2
   1.2   Certain Rules of Interpretation ...................................... 13
   1.3   Successors and Assigns .............................................. 14
   1.4   Governing Law ........................................................ 14
   1.5   Schedules .............................................................. 15

ARTICLE 2   PURPOSE AND EFFECT OF THE CONSOLIDATED CCAA PLAN ............ 15
   2.1   Purpose ................................................................ 15
   2.2   Persons Affected ...................................................... 15
   2.3   Persons Not Affected ................................................. 15

ARTICLE 3   CLASSIFICATION OF CREDITORS, VOTING AND RELATED
             MATTERS............................................................... 16
   3.1   Claims Procedure .................................................... 16
   3.2   Classification of Creditors .......................................... 16
   3.3   Claims of Affected Creditors ........................................ 16
   3.4   Creditors' Meeting ................................................... 16
   3.5   Voting ................................................................. 16
   3.6   Guarantees and Similar Covenants ................................. 17
   3.7   Set-Off ............................................................... 17

ARTICLE 4   CLASSIFICATION OF UNITHOLDERS, VOTING AND RELATED
             MATTERS............................................................... 17
   4.1   Unitholder Procedure ................................................ 17
   4.2   Classification of Unitholders ........................................ 17
   4.3   Unitholders' Meeting ................................................ 17
   4.4   Voting ................................................................. 17
   4.5   Approval by Unitholders ............................................. 18
   4.6   Guarantees and Similar Covenants ................................. 18

ARTICLE 5   AVAILABLE FUNDS, RESERVES AND CASH POOLS ................... 18
   5.1   Available Funds ...................................................... 18
   5.2   Administrative Costs Reserve........................................ 18
   5.3   Insurance Deductible Reserve ....................................... 18
   5.4   Unresolved Claims Reserve.......................................... 19
   5.5   Composition of the Affected Creditors' Distribution Cash Pool........ 19
   5.6   Composition of the Unitholders' Distribution Cash Pool................ 20
   5.7   Remaining Funds .................................................... 20

ARTICLE 6   PROVISIONS REGARDING DISTRIBUTIONS AND PAYMENTS ............ 20
   6.1   Distributions from the Affected Creditors' Distribution Cash Pool ..... 20
   6.2   Distributions from the Unitholders' Distribution Cash Pool ............. 21
   6.3   Payment of Administrative Reserve Costs ........................... 21

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| 6.4 | Payment of Insurance Deductible Reserve Costs | 21 |
| 6.5 | Cancellation of Instruments Evidencing Affected Claims | 22 |
| 6.6 | Crown Priority Claims | 22 |
| 6.7 | Currency | 22 |
| 6.8 | Interest | 22 |
| 6.9 | Treatment of Undeliverable Distributions | 22 |
| 6.10 | Assignment of Claims for Voting and Distribution Purposes | 23 |
| 6.11 | Assignment of Trust Units for Voting Purposes | 24 |
| 6.12 | Allocation of Distributions | 24 |
| 6.13 | Withholding and Reporting Requirements | 24 |
| ARTICLE 7 | PROCEDURE FOR DISTRIBUTIONS REGARDING UNRESOLVED CLAIMS | 25 |
| 7.1 | No Distribution Pending Allowance | 25 |
| 7.2 | Unresolved Claims Reserve | 25 |
| 7.3 | Distributions After Unresolved Claims Resolved | 25 |
| ARTICLE 8 | COMPANY REORGANIZATION | 26 |
| 8.1 | Corporate Authorizations | 26 |
| 8.2 | Charges | 26 |
| 8.3 | Plan Implementation Date Steps and Transactions | 26 |
| 8.4 | Post-Plan Implementation Date Transactions | 27 |
| ARTICLE 9 | RELEASES | 28 |
| 9.1 | Consolidated CCAA Plan Releases | 28 |
| ARTICLE 10 | COURT SANCTION, CONDITIONS PRECEDENT AND IMPLEMENTATION | 29 |
| 10.1 | Application for Sanction Order | 29 |
| 10.3 | Conditions Precedent to Implementation of the Consolidated CCAA Plan | 32 |
| ARTICLE 11 | GENERAL | 33 |
| 11.1 | Binding Effect | 33 |
| 11.2 | Waiver of Defaults | 34 |
| 11.3 | Claims Bar Date | 34 |
| 11.4 | Deeming Provisions | 34 |
| 11.5 | Non-Consummation | 34 |
| 11.6 | Modification of the Consolidated CCAA Plan | 35 |
| 11.7 | Paramountcy | 35 |
| 11.8 | Severability of Plan Provisions | 36 |
| 11.9 | Reviewable Transactions | 36 |
| 11.10 | Responsibilities of the Monitor | 36 |
| 11.11 | Different Capacities | 36 |
| 11.12 | Notices | 36 |

LEGAL_1:30656728.2

## TABLE OF CONTENTS
(continued)

**Page**

11.13   Further Assurances ........................................................................................ 38

LEGAL_1:30656728.2

Court File No. CI 12-01-76323

## THE QUEENS BENCH

### Winnipeg Centre

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PROPOSED PLAN OF COMPROMISE OR
ARRANGEMENT WITH RESPECT TO ARCTIC GLACIER INCOME FUND, ARCTIC
GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC. and the ADDITIONAL
APPLICANTS LISTED IN SCHEDULE "A" HERETO

(collectively, the "APPLICANTS")

## CONSOLIDATED PLAN OF COMPROMISE OR ARRANGEMENT

**WHEREAS** the Applicants and Glacier Valley Ice Company, L.P. (collectively, the "**Arctic Glacier Parties**") are insolvent;

**AND WHEREAS** the Applicants obtained an Order made by the Honourable Madam Justice Spivak of the Court of the Queen's Bench of Manitoba (the "**CCAA Court**") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") dated February 22, 2012 (the "**Initial Order**") that, among other things, appointed Alvarez & Marsal Canada Inc. as Monitor (the "**Monitor**") of the Applicants and permitted the Applicants to file with the CCAA Court one or more plans of compromise or arrangement;

**AND WHEREAS** the Initial Order was recognized by the U.S. Bankruptcy Court pursuant to Chapter 15 of the U.S. Bankruptcy Code;

**AND WHEREAS** pursuant to and in accordance with the Initial Order, the Applicants conducted a Sale and Investor Solicitation Process (the "**SISP**") for the purpose of offering the opportunity for potential investors to purchase or invest in the business and operations of the Applicants;

**AND WHEREAS** on June 7, 2012, the Applicants entered into an agreement in accordance with the SISP (the "**Asset Purchase Agreement**") with Arctic Glacier, LLC (formerly H.I.G. Zamboni, LLC, the "**Purchaser**") providing for the purchase and sale of substantially all of the assets, undertaking and property of the Applicants (other than the assets of Arctic Glacier Income Fund (the "**Fund**")) used in the conduct of the Applicants' business (the "Assets");

**AND WHEREAS** the Asset Purchase Agreement was approved by the CCAA Court by an Order dated June 21, 2012, which was amended by an Order dated July 12, 2012, (the "**Canadian Vesting and Approval Order**");

AND WHEREAS the Canadian Vesting and Approval Order was recognized by an Order of the U.S. Bankruptcy Court in the Chapter 15 Proceedings on July 17, 2012;

AND WHEREAS the transactions contemplated by the Asset Purchase Agreement were completed on July 27, 2012 and, on closing, the Purchaser assumed the Assumed Liabilities (as defined in the Asset Purchase Agreement) and the Purchaser paid the cash portion of the Purchase Price (as defined in the Asset Purchase Agreement) by payment of certain obligations of the Applicants and by payment of the balance of approximately $130.2 million which is being held by the Monitor in trust pending directions from the CCAA Court;

AND WHEREAS the Applicants no longer carry on any active business and the Available Funds (as defined herein) represent the entire estate available for the benefit of the creditors of the Applicants and the Unitholders;

AND WHEREAS the Monitor obtained an order made by the Honourable Madam Justice Spivak of the CCAA Court on September 5, 2012, as amended, extended, restated or varied from time to time, which, among other things, provided for a claims process and set the Claims Bar Date (the "Claims Procedure Order");

AND WHEREAS pursuant to the Claims Procedure Order, the CCAA Court established a procedure which, among other things, required all Persons having an Affected Claim to file a proof of such Affected Claim with the Monitor on or before the Claims Bar Date or the DO&T Indemnity Claims Bar Date, as applicable;

AND WHEREAS the Claims Procedure Order was recognized by the U.S. Bankruptcy Court on September 14, 2012;

AND WHEREAS the CCAA Court provided for the appointment of claims officers and established the claims officers' authority for adjudicating disputed Affected Claims by order of the Honourable Madam Justice Spivak made on March 7, 2013 (the "Claims Officer Order");

AND WHEREAS the Fund is a publicly traded limited purpose income trust established by the Declaration of Trust;

AND WHEREAS the Consolidated CCAA Plan will facilitate distributions to Affected Creditors and, to the extent of a sufficient surplus of Available Funds, the Unitholders;

NOW THEREFORE the Applicants hereby propose this Consolidated CCAA Plan to the Affected Creditors and the Unitholders under and pursuant to the CCAA:

## ARTICLE 1
## INTERPRETATION

### 1.1    Definitions

For the purposes of the Consolidated CCAA Plan, the following terms shall have the following meanings ascribed thereto:

"Administration Charge" has the meaning given to that term in paragraph 50 of the Initial Order.

"**Administrative Costs Reserve**" has the meaning given to that term in Section 5.2 of the Consolidated CCAA Plan.

"**Administrative Reserve Costs**" means administrative claims and costs outstanding on the Plan Implementation Date (or arising thereafter) falling within one or more categories to be specified by the Monitor, including, without limitation: (a) amounts in respect of the fees and costs to be incurred by (i) the Monitor, its counsel and its advisors; (ii) the Arctic Glacier Parties, their counsel and their advisors; (iii) the Trustees and their counsel; and (iv) the CPS, in each case on a solicitor and own client full indemnity basis (as applicable) with respect to the performance of such parties' duties and obligations whether arising before or after the Plan Implementation Date; (b) amounts secured by the Charges that remain owing on the Plan Implementation Date, if any; (c) amounts in respect of existing or future taxes, expenses and other disbursements that are or may become payable; (d) amounts in respect of outstanding Crown Claims, if any; (e) amounts in respect of potential cost awards regarding litigation associated with Claims; and (f) amounts in respect of general contingency costs.

"**Affected Claim**" means any Claim or DO&T Claim that is not an Excluded Claim.

"**Affected Creditor**" means any Person having an Affected Claim (including a Class Claim, DOJ Claim, DO&T Claim and/or a DO&T Indemnity Claim), but only with respect to and to the extent of such Affected Claim, and includes, without limitation, the transferee or assignee of an Affected Claim transferred and recognized as a Claimant in accordance with the Claims Procedure Order or a trustee, executor, liquidator, receiver, receiver and manager or other Person acting on behalf of or through such Person.

"**Affected Creditors' Class**" has the meaning given to that term in Section 3.2 of the Consolidated CCAA Plan.

"**Affected Creditors' Distribution Cash Pool**" has the meaning given to that term in Section 5.5 of the Consolidated CCAA Plan.

"**Aggregate Interest Amount**" means the aggregate amount of interest to be paid on the Plan Implementation Date with respect to: (a) all Proven Claims (other than the Deemed Proven Claims, the Canadian Direct Purchaser Proven Claim and the Indirect Purchaser Proven Claim); and (b) all Unresolved Claims on the assumption (for calculation purposes only) that such Unresolved Claims will become Proven Claims in the full amount asserted by the holders of the Unresolved Claims in their respective Proofs of Claim; in each case calculated using the Applicable Interest Rate.

"**AGI-AGIF Payables**" has the meaning given to that term in Step 26 in Schedule "B" of the Consolidated CCAA Plan.

"**AGI-AGIF Total Distribution Amount**" means the amount determined by the formula $(A+B) - C$, where A is the amount of the Unitholders' Distribution Cash Pool as of the Plan Implementation Date immediately prior to the completion of Step 30 of Schedule "B" of the Consolidated CCAA Plan, B is the aggregate of the amounts to be paid in satisfaction of the Proven Claims pursuant to Step 29 of Schedule "B" of the Consolidated CCAA Plan, C is the portion of the Available Funds held by the Monitor on

behalf of the Fund immediately prior to the completion of Step 27 of Schedule "B" of the Consolidated CCAA Plan.

"**AGI-AGII Payables**" has the meaning given to that term in Step 22 in Schedule "B" of the Consolidated CCAA Plan.

"**AGIF-AGI Payables**" has the meaning given to that term in Step 26 in Schedule "B" of the Consolidated CCAA Plan.

"**AGII-AGI Payables**" has the meaning given to that term in Step 22 in Schedule "B" of the Consolidated CCAA Plan.

"**AGII-AGI Total Distribution Amount**" means the amount determined by the formula $(A+B+C) - D$, where A is the amount of the Unitholders' Distribution Cash Pool as of the Plan Implementation Date immediately prior to the completion of Step 30 of Schedule "B" of the Consolidated CCAA Plan, B is the aggregate of the amounts to be paid in satisfaction of the Proven Claims pursuant to Step 29 of Schedule "B" of the Consolidated CCAA Plan, C is the aggregate of the amounts to be paid in satisfaction of the Proven Claims pursuant to Step 25 of Schedule "B" of the Consolidated CCAA Plan, and D is the portion of the Available Funds held by the Monitor on behalf of Arctic Glacier Inc. and the Fund immediately prior to the completion of Step 23 of Schedule "B" of the Consolidated CCAA Plan.

"**Applicable Interest Rate**" means the rate of interest to be paid on each Proven Claim (other than the Deemed Proven Claims, the Canadian Direct Purchaser Proven Claim and the Indirect Purchaser Proven Claim), as such rate is set out in the Sanction Order.

"**Applicable Law**" means, in respect of any Person, property, transaction, event or other matter, any law, statute, regulation, code, ordinance, principle of common law or equity, municipal by-law, treaty, or order, domestic or foreign, applicable to that Person, property, transaction, event or other matter and all applicable requirements, requests, official directives, rules, consents, approvals, authorizations, guidelines, and policies, in each case, having the force of law, of any Government Authority having or purporting to have authority over that Person, property, transaction, event or other matter and regarded by such Government Authority as requiring compliance.

"**Arctic Glacier Parties**" has the meaning given to that term in the recitals hereto.

"**Asset Purchase Agreement**" has the meaning given to that term in the recitals hereto.

"**Assets**" has the meaning given to that term in the recitals hereto.

"**Assumed Liabilities**" means the liabilities the Purchaser assumed, fulfilled, performed and discharged pursuant to Section 2.03 of the Asset Purchase Agreement.

"**Available Funds**" means the total of (i) the proceeds of the sale or disposition of the Assets that have been paid by the Purchaser and are being held by the Monitor; (ii) the cash balances transferred by the Arctic Glacier Parties to the Monitor, in the hands of the Monitor at the Effective Time on the Plan Implementation Date; (iii) all other monies

- 5 -

held by the Monitor, on behalf of the Arctic Glacier Parties, that are in the hands of the Monitor at the Effective Time on the Plan Implementation Date; and (iv) all monies received by the Monitor, on behalf of the Arctic Glacier Parties, following the Plan Implementation Date; less (v) the amount required to effect payment of the Recovered Fees on the Plan Implementation Date.

"**Beneficial Unitholder**" means a holder of a beneficial interest in one or more Trust Units that are held by a Registered Unitholder for and on its behalf.

"**BIA**" means the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended.

"**Business Day**" means a day, other than a Saturday or a Sunday, on which banks are generally open for business in Winnipeg, Manitoba.

"**Canadian Direct Purchaser Proven Claim**" means an Affected Claim in favour of the Canadian Retail Litigation Claimants, as provided for in the Canadian Retail Litigation Settlement Agreement.

"**Canadian Retail Litigation Settlement Agreement**" means the settlement agreement entered into as of May 4, 2011 between 1008021 Alberta Ltd., Louise Knowles c.o.b. as Special Event Marketing, Grand-Slam Concert, Productions Ltd., Arctic Glacier, Inc. and Reddy Ice Holdings, Inc., as approved by the Ontario Superior Court of Justice on July 11, 2013.

"**Canadian Retail Litigation Claimants**" has the meaning ascribed to it in the Claims Procedure Order.

"**Canadian Vesting and Approval Order**" has the meaning given to that term in the recitals hereto.

"**CCAA**" has the meaning given to that term in the recitals hereto.

"**CCAA Court**" has the meaning given to that term in the recitals hereto.

"**CCAA Proceedings**" means the proceedings commenced by the Applicants in the CCAA Court at Winnipeg, Manitoba under Court File No. CI 12-01-76323.

"**CEPA Claim**" means the Proven Claim of the California Environmental Protection Agency – Department of Toxic Substance Control against Mountain Water Ice Company.

"**Chapter 15 Proceedings**" means proceedings commenced by the Monitor in the State of Delaware in which the CCAA Proceedings have been recognized pursuant to Chapter 15 of the U.S. Bankruptcy Code.

"**Charges**" means the Administration Charge, Directors' Charge, Critical Supplier Charge, Inter-Company Balances Charge and Class Counsel Charge.

"**Claim**" means any right or claim of any Person, including an Equity Claim, that may be asserted or made in whole or in part against an Arctic Glacier Party, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind

whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature, including any right or ability of any Person (including Directors, Officers and Trustees) to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts arising prior to the Claims Bar Date (B) relates to a time period prior to the Claims Bar Date, or (C) is a right or claim of any kind that would be a claim provable in bankruptcy within the meaning of the BIA had the Arctic Glacier Party become bankrupt on the Claims Bar Date.

"**Claimant**" means any Person having an Affected Claim and includes the transferee or assignee of an Affected Claim or a trustee, executor, liquidator, receiver, receiver and manager, or other Person acting on behalf of or through any such Person.

"**Claims Bar Date**" means October 31, 2012.

"**Claims Procedure Order**" has the meaning given to that term in the recitals hereto.

"**Claims Officer Order**" has the meaning given to that term in the recitals hereto.

"**Class Claim**" has the meaning ascribed to it in the Claims Procedure Order.

"**Class Counsel Charge**" has the meaning given to that term in paragraph 6 of the Order made by the CCAA Court dated October 16, 2013, and titled the "Indirect Proven Claim Settlement Order".

"**Class Representative**" has the meaning ascribed to it in the Claims Procedure Order.

"**Consolidated CCAA Plan**" means this Plan of Compromise or Arrangement as amended, supplemented or restated from time to time in accordance with the terms hereof.

"**CPS**" means 7088418 Canada Inc. o/a Grandview Advisors and any successor thereto appointed by the CCAA Court.

"**Creditors' Meeting**" means the meeting of Affected Creditors that will be deemed to occur pursuant to the Meeting Order with a deemed vote of Affected Creditors in favour of a resolution to approve the Consolidated CCAA Plan.

- 7 -

**"Critical Supplier Charge"** has the meaning given to that term in paragraph 36 of the Initial Order.

**"Crown Claims"** has the meaning given to that term in Section 6.6 of the Consolidated CCAA Plan.

**"Declaration of Trust"** means the Second Amended and Restated Declaration of Trust made as of December 6, 2004 among Robert Nagy, James E. Clark, Peter Hyndman, David Swaine and Gary Filmon, as Trustees, Laxus Holdings Inc., as Settlor, and the Registered Unitholders, as amended from time to time.

**"Deemed Proven Claims"** means: (i) an Affected Claim in favour of the Direct Purchaser Claimants in the principal amount of US$10,000,000 plus applicable interest against the Fund, Arctic Glacier Inc. and Arctic Glacier International Inc. at the interest rate set out in the Sanction Order; and (ii) the DOJ Claim.

**"Direct Purchaser Claim"** means a Claim in favour of the members of the class(es) described in the statements of claim issued in the Direct Purchaser Litigation against the Fund, Arctic Glacier Inc. and Arctic Glacier International Inc.

**"Direct Purchaser Claimants"** has the meaning ascribed to it in the Claims Procedure Order.

**"Direct Purchaser Litigation"** means In re Packaged Ice Antitrust Litigation Direct Purchaser Class, as certified by the United States District Court for the Eastern District of Michigan on December 13, 2011 (Dkt. No. 406, 08-md-1952 E.D. Mich.).

**"Direct Purchaser Settlement Agreement"** means the settlement agreement dated March 30, 2011 between the Fund, Arctic Glacier Inc., Arctic Glacier International Inc. and the Plaintiffs (as defined therein), as approved by the United States District Court for the Eastern District of Michigan on December 13, 2011.

**"Director"** means any Person who is or was or may be deemed to be or have been, whether by statute, operation of law or otherwise, a director or *de facto* director of an Arctic Glacier Party.

**"Director's Charge"** has the meaning given to that term in paragraph 40 of the Initial Order.

**"Distribution Claim"** means with respect to: (i) each of the Deemed Proven Claims, the amount of each such Proven Claim, which shall include accrued interest calculated at the interest rates set out in the Sanction Order in respect of each such Proven Claim; (ii) the Canadian Direct Purchaser Proven Claim, the amount of such Proven Claim (iii) the Indirect Purchaser Proven Claim, the amount of such Proven Claim; and (iv) each other Affected Creditor's Proven Claim, the aggregate of each such Affected Creditor's Proven Claim and the applicable portion of the Aggregate Interest Amount in respect of such Proven Claim.

**"Distribution Date"** means any date from time to time set by the Monitor in accordance with the provisions of the Consolidated CCAA Plan, which shall include the Final Distribution Date, to effect distributions from the Available Funds to Affected Creditors in respect of Distribution Claims and/or distributions to Unitholders, other than distributions that occur on the Plan Implementation Date pursuant to Section 8.3 herein.

**"DO&T Claim"** means (i) any right or claim of any Person that might have been asserted or made in whole or in part against one or more Directors, Officers or Trustees that relates to a Claim for which such Directors, Officers or Trustees are by law liable to pay in their capacity as Directors, Officers or Trustees, or (ii) any right or claim of any Person that might have been asserted or made in whole or in part against one or more Directors, Officers or Trustees, in that capacity, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof, is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature, including any right or ability of any Person to advance a claim for contribution or indemnity from any such Directors, Officers or Trustees or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts arising prior to the Claims Bar Date; or (B) relates to a time period prior to the Claims Bar Date, but not including an Excluded Claim.

**"DO&T Indemnity Claim"** means any existing or future right or claim of any Director, Officer or Trustee against an Arctic Glacier Party which arose or arises as a result of any Person filing a DO&T Proof of Claim in respect of such Director, Officer or Trustee for which such Director, Officer or Trustee is entitled to be indemnified by such Arctic Glacier Party.

**"DO&T Indemnity Claims Bar Date"** has the meaning set out in paragraph 21 of the Claims Procedure Order.

**"DO&T Proof of Claim"** means any Proof of Claim filed in respect of a DO&T Claim in accordance with the Claims Procedure Order.

**"DOJ Claim"** means an Affected Claim in favour of the United States Department of Justice against Arctic Glacier International Inc. in the amount of US$7,032,046.96 as of July 9, 2012, plus applicable interest at the interest rate set out in the Sanction Order.

**"Effective Time"** means 12:01 a.m. on the Plan Implementation Date or such other time on such date as the Arctic Glacier Parties and the Monitor may agree.

"**Equity Claim**" has the meaning set forth in Section 2(1) of the CCAA.

"**Excluded Claim**" means:

(a)     Crown Claims;

(b)     any Claim entitled to the benefit of the Charges;

(c)     any Claim of an Arctic Glacier Party against another Arctic Glacier Party;

(d)     any Claim in respect of Assumed Liabilities; and

(e)     any Claim entitled to the benefit of any applicable insurance policy, excluding any such Claim or portion thereof that is recoverable as against an Arctic Glacier Party, Director, Officer or Trustee, as applicable.

"**Filing Date**" means February 22, 2012.

"**Final Distribution Date**" means the date determined by the Monitor, acting reasonably, following the payment in full or final reservation of all Administrative Reserve Costs and the resolution of all Unresolved Claims.

"**Fund**" has the meaning given to that term in the recitals hereto.

"**Government Authority**" means any governmental, regulatory or administrative authority, department, agency, commission, bureau, official, minister, board, panel, tribunal, Crown corporation, Crown ministry, court or dispute settlement panel or other law, rule or regulation-making or enforcing entity having or purporting to have jurisdiction on behalf of any nation, or province, territory or state or other subdivision thereof or any municipality, district or other subdivision thereof or other geographic or political subdivision of any of them or exercising, or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power.

"**Indirect Purchaser Claim Settlement Agreement**" means the settlement agreement entered into as of October 22, 2013, individually and on behalf of the Settlement Class (as defined in the Indirect Purchaser Claim Settlement Agreement), certain Arctic Glacier Parties and the Monitor, as approved by the U.S. Bankruptcy Court on February 27, 2014.

"**Indirect Purchaser Claimants**" has the meaning ascribed to it in the Claims Procedure Order.

"**Indirect Purchaser Proven Claim**" means an Affected Claim in favour of the Indirect Purchaser Claimants, as provided for in the Indirect Purchaser Claim Settlement Agreement, less certain noticing costs and the fees and expenses of UpShot Services LLC that have been paid by the Monitor, on behalf of the Applicants, in accordance with the Indirect Purchaser Settlement.

"**Initial Order**" has the meaning given to that term in the recitals hereto.

**"Insurance Deductible Reserve"** has the meaning given to that term in Section 5.3 of the Consolidated CCAA Plan.

**"Inter-Company Balances Charge"** has the meaning given to that term in paragraph 16 of the Initial Order.

**"IRC"** means the Internal Revenue Code of 1986, as amended.

**"Meeting Order"** means the Order of the CCAA Court under the CCAA that, among other things, sets the date for the Creditors' Meeting and the Unitholders' Meeting, as same may be amended, restated or varied from time to time.

**"Monitor"** has the meaning given to that term in the recitals hereto.

**"Monitor's Website"** means www.alvarezandmarsal.com/arctic-glacier-income-fund-arctic-glacier-inc.-and-subsidiaries.

**"Nominees"** has the meaning given to that term in Section 6.2 of the Consolidated CCAA Plan.

**"Officer"** means anyone who is or was or may be deemed to be or have been, whether by statute, operation of law or otherwise, an officer or *de facto* officer of an Arctic Glacier Party.

**"Person"** is to be broadly interpreted and includes any individual, firm, corporation, limited or unlimited liability company, general or limited partnership, association, trust, unincorporated organization, joint venture, Government Authority or any agency, regulatory body, officer or instrumentality thereof or any other entity, wherever situate or domiciled, and whether or not having legal status, and whether acting on their own or in a representative capacity.

**"PID Charge Amount"** has the meaning given to that term in Section 8.2 of the Consolidated CCAA Plan.

**"Plan Implementation Date"** means the date on which the Consolidated CCAA Plan becomes effective, which shall be the Business Day on which the Monitor has filed with the CCAA Court a certificate confirming that all conditions to implementation of the Consolidated CCAA Plan pursuant to Section 10.3 have been satisfied or waived.

**"Plan Sanction Date"** means the date the Sanction Order is made by the CCAA Court.

**"Pro Rata Share"** means, in respect of the Unitholders' Distribution Cash Pool, the percentage that the Trust Units held by a Unitholder at the applicable Unitholder Distribution Record Date bears to the aggregate of all Trust Units, calculated as at the applicable Unitholder Distribution Record Date.

**"Proof of Claim"** means any proof of claim in respect of an Affected Claim filed in accordance with the Claims Procedure Order.

- 11 -

"**Proven Claim**" means each of the Deemed Proven Claims, the Canadian Direct Purchaser Proven Claim, the Indirect Purchaser Proven Claim and each Affected Claim that has been accepted as a proven Affected Claim by the Monitor or, if it was an Unresolved Claim, has been finally adjudicated in accordance with the Claims Officer Order, settled or accepted by the Monitor, in each case, for the amount settled, accepted or adjudicated as being owing.

"**Proven Claim Amount**" has the meaning given to that term in Section 7.3 of the Consolidated CCAA Plan.

"**Purchase Price**" has the meaning ascribed thereto in the Asset Purchase Agreement.

"**Purchaser**" has the meaning given to that term in the recitals hereto.

"**Recognition Order**" means an order of the U.S. Bankruptcy Court recognizing an Order of the CCAA Court in the Chapter 15 Proceedings.

"**Recovered Fees**" has the meaning given to that term in Section 8.3 of the Consolidated CCAA Plan.

"**Registered Unitholder**" means, as of the Unitholder Record Date, each holder of one or more Trust Units that, at such time, are outstanding and entitled to the benefits of the Declaration of Trust, as shown on the register of such holders maintained by the Transfer Agent or by the Trustees on behalf of the Fund.

"**Releasees**" has the meaning given to that term in Section 9.1 of the Consolidated CCAA Plan.

"**Required Unitholder Majority**" has the meaning given to that term in Section 4.5 of the Consolidated CCAA Plan.

"**Return of Capital Amount**" has the meaning given to that term in Step 28 in Schedule "B" of the Consolidated CCAA Plan.

"**Sanction Order**" means an order by the CCAA Court which, among other things, shall sanction and approve the Consolidated CCAA Plan under the CCAA and shall include provisions as may be necessary or appropriate to give effect to the Consolidated CCAA Plan, including provisions in substance similar to those set out in Section 10.2 of the Consolidated CCAA Plan.

"**SISP**" has the meaning given that term in the recitals hereto.

"**Step 3 Companies**" has the meaning given to that term in Step 3 in Schedule "B" of the Consolidated CCAA Plan.

"**Step 10 Companies**" has the meaning given to that term in Step 10 in Schedule "B" of the Consolidated CCAA Plan.

"**Step 13 Companies**" has the meaning given to that term in Step 13 in Schedule "B" of the Consolidated CCAA Plan.

- 12 -

"**Step 17 Companies**" has the meaning given to that term in Step 13 in Schedule "B" of the Consolidated CCAA Plan.

"**Tax Statutes**" means all legislative or administrative enactments governing federal, state, local, or foreign income, premium, property (real or personal), sales, excise, employment, payroll, withholding, gross receipts, license, severance, stamp, occupation, windfall profits, environmental, customs duties, capital stock, franchise, profits, social security (or similar, including FICA), unemployment, disability, use, transfer, registration, value added, alternative or add-on minimum, estimated or other tax of any kind or any charge of any kind in the nature of (or similar to) taxes whatsoever, including any interest, penalty or addition thereto, including, without limiting the generality of the foregoing, the IRC, section 159 of the *Income Tax Act* (Canada), section 270 of the *Excise Tax Act* (Canada); section 117 of the *Taxation Act, 2007* (Ontario); section 107 of the *Corporations Tax Act* (Ontario); section 22 of the *Retail Sales Tax Act* (Ontario); section 34 of the *Income Tax Act* (British Columbia); section 222 of the *Provincial Sales Tax Act* (British Columbia); section 49 of the *Alberta Corporate Tax Act*; section 85 of the *Income Tax Act, 2000* (Saskatchewan); section 48 of the *Revenue and Financial Services Act* (Saskatchewan); section 22 of the *Income Tax Act* (Manitoba); section 73 of the *Tax Administration and Miscellaneous Taxes Act* (Manitoba); section 14 of the *Tax Administration Act* (Quebec); and section 313 of the *Act Respecting the Quebec Sales Tax*.

"**Transfer Agent**" means such company as may from time to time be appointed by the Fund to act as registrar and transfer agent of the Trust Units, together with any sub-transfer agent duly appointed by the Transfer Agent.

"**Transferred Shares**" has the meaning given to that term in Step 6 in Schedule "B" of the Consolidated CCAA Plan.

"**Trust Unit**" means, as of the Unitholder Record Date or the applicable Unitholder Distribution Record Date, as the case may be, each trust unit of the Fund authorized and issued under the Declaration of Trust that, at such time, is outstanding and entitled to the benefits of the Declaration of Trust.

"**Trustee**" means any Person who is or was or may be deemed to be or have been, whether by statute, operation of law or otherwise, a trustee or *de facto* trustee of the Fund, in such capacity and includes James E. Clark, David Swaine and Gary Filmon.

"**Unitholder Distribution**" has the meaning given to that term in Section 6.2 of the Consolidated CCAA Plan.

"**Unitholder Distribution Record Date**" means the date(s) determined from time to time by the Monitor that are, in each case, at least 21 days prior to a contemplated Unitholder Distribution including, without limitation, the contemplated Unitholder Distribution on the Plan Implementation Date.

"**Unitholder Record Date**" means June 16, 2014.

- 13 -

"**Unitholders**" means, collectively, (a) each Registered Unitholder that holds one or more Trust Units solely for and on behalf of itself; and (b) each Beneficial Unitholder.

"**Unitholders' Distribution Cash Pool**" has the meaning given to that term in Section 5.6 of the Consolidated CCAA Plan.

"**Unitholders' Meeting**" means a meeting of Unitholders held pursuant to the Meeting Order to consider and vote on a resolution to approve the Consolidated CCAA Plan and any other matters related to the Consolidated CCAA Plan or its implementation.

"**Unresolved Claim**" means an Affected Claim, in the amount specified in the corresponding Proof of Claim, that has not been finally determined as a Proven Claim in accordance with the Claims Procedure Order, the Claims Officer Order and the Meeting Order.

"**Unresolved Claims Reserve**" has the meaning given to that term in Section 5.4 of the Consolidated CCAA Plan.

"**U.S. Bankruptcy Code**" means Title 11 of the United States Code.

"**U.S. Bankruptcy Court**" means the U.S. Bankruptcy Court for the District of Delaware.

"**Withholding Obligation**" has the meaning given to that term in Section 6.13 of the Consolidated CCAA Plan.

## 1.2   Certain Rules of Interpretation

For the purposes of the Consolidated CCAA Plan:

(a)   any reference in the Consolidated CCAA Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(b)   any reference in the Consolidated CCAA Plan to an Order or an existing document or exhibit filed or to be filed means such Order, document or exhibit as it may have been or may be amended, modified, or supplemented;

(c)   unless otherwise specified, all references to currency are to Canadian dollars;

(d)   the division of the Consolidated CCAA Plan into "Articles" and "Sections" and the insertion of a table of contents are for convenience of reference only and do not affect the construction or interpretation of the Consolidated CCAA Plan, nor are the descriptive headings of "Articles" and "Sections" intended as complete or accurate descriptions of the content thereof;

(e)   the use of words in the singular or plural, or with a particular gender, including a definition, shall not limit the scope or exclude the application of any provision

- 14 -

of the Consolidated CCAA Plan or a Schedule hereto to such Person (or Persons) or circumstances as the context otherwise permits;

(f)     the words "includes" and "including" and similar terms of inclusion shall not, unless expressly modified by the words "only" or "solely", be construed as terms of limitation, but rather shall mean "includes but is not limited to" and "including but not limited to", so that references to included matters shall be regarded as illustrative without being either characterizing or exhaustive;

(g)     unless otherwise specified, all references as to time herein and any document issued pursuant hereto shall mean local time in Winnipeg, Manitoba, Canada, and any reference to an event occurring on a Business Day shall mean prior to 5:00 p.m. CST or CDT, as the case may be, on such Business Day;

(h)     unless otherwise specified, time periods within or following which any payment is to be made or act is to be done shall be calculated by excluding the day on which the period commences and including the day on which the period ends and by extending the period to the next succeeding Business Day if the last day of the period is not a Business Day;

(i)     unless otherwise provided, any reference to the U.S. Bankruptcy Code and to a statute or other enactment of parliament or a legislature includes all regulations made thereunder, all amendments to or re-enactments of such statute or regulations in force from time to time, and, if applicable, any statute or regulation that supplements or supersedes such statute or regulation;

(j)     references to a specified "Article" or "Section" shall, unless something in the subject matter or context is inconsistent therewith, be construed as references to that specified Article or Section of the Consolidated CCAA Plan, whereas the terms "the Consolidated CCAA Plan", "hereof", "herein", "hereto", "hereunder" and similar expressions shall be deemed to refer generally to the Consolidated CCAA Plan and not to any particular "article", "section" or other portion of the Consolidated CCAA Plan and include any documents supplemental hereto; and

(k)     the word "or" is not exclusive.

**1.3     Successors and Assigns**

The Consolidated CCAA Plan shall be binding upon and shall enure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of any Person or party named or referred to in the Consolidated CCAA Plan, including the Arctic Glacier Parties, all Affected Creditors, the Directors and Officers, the Unitholders, the Trustees and the Releasees.

**1.4     Governing Law**

The Consolidated CCAA Plan shall be governed by and construed in accordance with the laws of the Province of Manitoba and the federal laws of Canada applicable therein. All

- 15 -

questions as to the interpretation or application of the Consolidated CCAA Plan and all proceedings taken in connection with the Consolidated CCAA Plan and its provisions shall be subject to the exclusive jurisdiction of the CCAA Court.

## 1.5 Schedules

The following are the Schedules to the Consolidated CCAA Plan, which are incorporated by reference into the Consolidated CCAA Plan and form a part of it:

Schedule "A"        Additional Applicants

Schedule "B"        Specified Plan Implementation Date Steps

## ARTICLE 2
## PURPOSE AND EFFECT OF THE CONSOLIDATED CCAA PLAN

## 2.1 Purpose

The purpose of the Consolidated CCAA Plan is to:

(a)  permit the settlement and/or determination of all Affected Claims in accordance with the Claims Procedure Order and the Claims Officer Order;

(b)  provide for the distribution of a sufficient amount of the Available Funds to holders of Proven Claims to satisfy such Proven Claims in full (plus applicable interest, if any, calculated at the interest rate set out in the Sanction Order);

(c)  provide for the distribution of any surplus of the Available Funds to each Unitholder, in the amount of their Pro Rata Share, free and clear of any Claims of Affected Creditors; and

(d)  effect the wind-up and dissolution of certain of the Arctic Glacier Parties pursuant to and in accordance with the timing and manner set out in the Consolidated CCAA Plan.

## 2.2 Persons Affected

The Consolidated CCAA Plan provides for the complete satisfaction of all Proven Claims of Affected Creditors, plus payment of applicable interest, if any, calculated at the interest rate set out in the Sanction Order, in respect of such Proven Claims. The Consolidated CCAA Plan also provides for distributions from time to time to Unitholders from the Unitholders' Distribution Cash Pool based on each Unitholder's Pro Rata Share to the extent that there are Available Funds to fund such distribution, following which the Trust Units will be terminated and the Fund shall cease to be listed and traded on the Canadian National Stock Exchange. The Consolidated CCAA Plan will become effective at the Effective Time on the Plan Implementation Date and shall be binding on and enure to the benefit of the Arctic Glacier Parties, the Affected Creditors, the Directors and Officers, the Unitholders, the Trustees and all other Persons named or referred to in, or subject to, the Consolidated CCAA Plan.

- 16 -

## 2.3    Persons Not Affected

For greater certainty, the Consolidated CCAA Plan does not affect the holders of Excluded Claims with respect to and to the extent of their Excluded Claims. Nothing in the Consolidated CCAA Plan shall affect the Arctic Glacier Parties' rights and defences, both legal and equitable, with respect to any Excluded Claims, including, but not limited to, all rights with respect to legal and equitable defences or entitlements to set-offs or recoupment against such Excluded Claims.

## ARTICLE 3
## CLASSIFICATION OF CREDITORS, VOTING AND RELATED MATTERS

## 3.1    Claims Procedure

The procedure for determining the validity and quantum of the Affected Claims for voting and distribution purposes under the Consolidated CCAA Plan shall be governed by the Claims Procedure Order, the Claims Officer Order, the Meeting Order, the CCAA and the Consolidated CCAA Plan.

## 3.2    Classification of Creditors

For the purposes of voting on the Consolidated CCAA Plan, there will be one consolidated class of creditors, which will be composed of all of the Affected Creditors (the "**Affected Creditors' Class**").

## 3.3    Claims of Affected Creditors

Affected Creditors shall:

(a)    prove their Affected Claims in accordance with the Claims Procedure Order and the Claims Officer Order;

(b)    be deemed to vote their Proven Claims or Unresolved Claims, as the case may be, at the Creditors' Meeting in favour of the resolution to approve the Consolidated CCAA Plan; and

(c)    receive the rights and distributions provided for under and pursuant to the Consolidated CCAA Plan and the Sanction Order.

## 3.4    Creditors' Meeting

The Creditors' Meeting shall be held in accordance with the Consolidated CCAA Plan, the Meeting Order, the Claims Procedure Order and the Claims Officer Order. Pursuant to the Meeting Order, the Creditors' Meeting shall be deemed to have been duly called and held on August 11, 2014 and every Affected Creditor shall be deemed to have voted in favour of a resolution to approve the Consolidated CCAA Plan.

- 17 -

## 3.5    Voting

Pursuant to the Meeting Order: (a) the Affected Creditors' Class shall be deemed to have voted in favour of a resolution to approve the Consolidated CCAA Plan at the Creditors' Meeting on August 11, 2014; and (b) the vote on the Consolidated CCAA Plan at the Creditors' Meeting shall be deemed to have been decided unanimously in favour of the resolution to approve the Consolidated CCAA Plan.

## 3.6    Guarantees and Similar Covenants

No Person who has a Claim under any guarantee, surety, indemnity or similar covenant in respect of any Claim which is affected pursuant to the Consolidated CCAA Plan or who has any right to claim over in respect of or to be subrogated to the rights of any Person in respect of a Claim which is affected pursuant to the Consolidated CCAA Plan shall be entitled to any greater rights as against the Arctic Glacier Parties than the Person whose Claim is affected pursuant to the Consolidated CCAA Plan.

## 3.7    Set-Off

The law of set-off applies to all Affected Claims.

## ARTICLE 4
## CLASSIFICATION OF UNITHOLDERS, VOTING AND RELATED MATTERS

## 4.1    Unitholder Procedure

The procedure for determining the amount of Trust Units held by each Unitholder for voting and distribution purposes under the Consolidated CCAA Plan shall be governed by the Meeting Order, the CCAA and the Consolidated CCAA Plan.

## 4.2    Classification of Unitholders

For the purposes of considering and voting on the Consolidated CCAA Plan, there will be one consolidated class of Unitholders, which shall be comprised of Unitholders as at the Unitholder Record Date.

## 4.3    Unitholders' Meeting

The Unitholders' Meeting will be called and held on August 11, 2014 pursuant to the Meeting Order for the purpose of considering and voting on the Consolidated CCAA Plan. The resolution to, among other things, approve the Consolidated CCAA Plan will be passed if it receives an affirmative vote of the Required Unitholder Majority.  Notice of the Unitholders' Meeting will be provided to all Unitholders as at Unitholder Record Date.

The quorum required at the Unitholders' Meeting shall be one Registered Unitholder or Beneficial Unitholder present at such meeting in person or by proxy and entitled to vote on the resolution to approve, among other things, the Consolidated CCAA Plan.

- 18 -

## 4.4   Voting

Each Unitholder shall be entitled to one vote for each Trust Unit held by such Unitholder on the Unitholder Record Date which, if voted in person or by proxy at the Unitholders' Meeting, shall be recorded as a vote for or against the Consolidated CCAA Plan, as the case may be.

## 4.5   Approval by Unitholders

The proposed resolution to approve the Consolidated CCAA Plan must receive the affirmative votes of more than 66 2/3% of the votes attached to Trust Units represented at the Unitholders' Meeting and cast in accordance with the Meeting Order (the **"Required Unitholder Majority"**).

## 4.6   Guarantees and Similar Covenants

No Person who holds an interest in the Trust Units under any guarantee, surety, indemnity or similar covenant in respect of the Trust Units or who has any right to claim over in respect of or to be subrogated to the rights of any Unitholder in respect of the Trust Units being affected pursuant to the Consolidated CCAA Plan shall be entitled to any greater rights as against the Arctic Glacier Parties than the Unitholders.

## ARTICLE 5
## AVAILABLE FUNDS, RESERVES AND CASH POOLS

## 5.1   Available Funds

The Monitor shall hold the Available Funds, on behalf of the Arctic Glacier Parties, in one or more separate interest-bearing accounts for each of the following reserves and pools (each as more particularly described herein): (a) Administrative Costs Reserve; (b) Insurance Deductible Reserve; (c) Unresolved Claims Reserve; (d) Affected Creditors' Distribution Cash Pool; and (e) Unitholders' Distribution Cash Pool.

## 5.2   Administrative Costs Reserve

On the Plan Implementation Date and in accordance with the Plan Implementation Date steps and transactions set out in Section 8.3 of the Consolidated CCAA Plan, an administrative costs reserve (the **"Administrative Costs Reserve"**) shall be established out of the Available Funds in the amount of US$10,000,000, which is to be held by the Monitor, on behalf of the Arctic Glacier Parties, for the purpose of paying the Administrative Reserve Costs in accordance with the Consolidated CCAA Plan.

## 5.3   Insurance Deductible Reserve

On the Plan Implementation Date and in accordance with the Plan Implementation Date steps and transactions set out in Section 8.3 of the Consolidated CCAA Plan, an insurance deductible reserve (the **"Insurance Deductible Reserve"**) shall be established out of the Available Funds in the amount of US$850,000, which is to be held by the Monitor, on behalf of the Arctic Glacier Parties, for the purpose of covering the payment of the deductible portion of the run-off of any litigation covered by insurance.

The quantum of the Insurance Deductible Reserve has been agreed to with the insurer and is intended to cover: (i) the deductible amounts currently outstanding as determined by the Monitor, in consultation with the Arctic Glacier Parties; (ii) deductible amounts that may become payable in respect of currently open claims as determined by the Monitor, in consultation with the Arctic Glacier Parties; and (iii) based on historical claim rates, deductible amounts for further claims related to the period prior to July 27, 2012 that have not yet been filed with the Monitor.

Any final remaining balance in the Insurance Deductible Reserve, as determined by the Monitor, will be deemed to have been transferred to the Administrative Costs Reserve on such date as is determined by the Monitor.

If an agreement is reached between the Monitor, on behalf of the Arctic Glacier Parties, and the insurer of the Arctic Glacier Parties with respect to the purchase of a "buy-out" policy (as an alternative to holding the Insurance Deductible Reserve), then the required payment by the Arctic Glacier Parties for such "buy-out" policy shall be paid by the Monitor, on behalf of the Arctic Glacier Parties, to the insurer of the Arctic Glacier Parties using funds in the Insurance Deductible Reserve. Following the completion of such purchase, any remaining balance in the Insurance Deductible Reserve will be deemed to have been transferred to the Administrative Costs Reserve on such date as is determined by the Monitor.

The Monitor shall have no obligation to make any payment out of the Insurance Deductible Reserve, and nothing in the Consolidated CCAA Plan, the Meeting Order or the Sanction Order shall be construed as obligating the Monitor to make any such payment if, in the Monitor's sole and unfettered discretion, the cost of making any such payment is prohibitive for so doing in relation to the quantum of the contemplated payment.

5.4     **Unresolved Claims Reserve**

On the Plan Implementation Date and in accordance with the Plan Implementation Date steps and transactions set out in Section 8.3 of the Consolidated CCAA Plan, an unresolved claims reserve (the "**Unresolved Claims Reserve**") shall be established out of the Available Funds and be held by the Monitor, on behalf of the Arctic Glacier Parties, in escrow in accordance with the Consolidated CCAA Plan in an amount equal to (a) the aggregate amount that would have been paid to all Affected Creditors holding Unresolved Claims in accordance with the Consolidated CCAA Plan (calculated on the basis of the amounts specified in such Affected Creditors' Proofs of Claim) if such Unresolved Claims had been Proven Claims on the Plan Implementation Date; and (b) the applicable portion of the Aggregate Interest Amount in respect of such Unresolved Claims.

5.5     **Composition of the Affected Creditors' Distribution Cash Pool**

On the Plan Implementation Date, an Affected Creditors' distribution cash pool (the "**Affected Creditors' Distribution Cash Pool**") shall be established from the Available Funds in an amount equal to:

> (a)     all Proven Claims of Affected Creditors with Affected Claims denominated in Canadian dollars on the Plan Implementation Date plus the applicable portion of the Aggregate Interest Amount in respect of such Proven Claims (save and except for the Canadian Direct Purchaser Proven Claim); and

- 20 -

(b)     all Proven Claims of Affected Creditors with Affected Claims denominated in United States dollars on the Plan Implementation Date plus the applicable portion of the Aggregate Interest Amount in respect of such Proven Claims (save and except for the Deemed Proven Claims, which shall include accrued interest calculated at the interest rates set out in the Sanction Order in respect of each such Proven Claims, and the Indirect Purchaser Proven Claim).

The Monitor shall hold the monies in the Affected Creditors' Distribution Cash Pool, on behalf of the Arctic Glacier Parties, in escrow for distribution to Affected Creditors with Proven Claims pursuant to and in accordance with the Consolidated CCAA Plan. The Available Funds in the Affected Creditors' Distribution Cash Pool shall be denominated in Canadian dollars or United States dollars depending upon whether the Proven Claim is denominated in Canadian dollars or United States dollars.

### 5.6     Composition of the Unitholders' Distribution Cash Pool

On the Plan Implementation Date, a Unitholders' distribution cash pool (the **"Unitholders' Distribution Cash Pool"**) shall be established out of the Available Funds in an amount equal to the Available Funds less the amounts used to fund the: (a) Administrative Costs Reserve; (b) Insurance Deductible Reserve; (c) Unresolved Claims Reserve; and (d) Affected Creditors' Distribution Cash Pool. The Monitor shall hold the Unitholders' Distribution Cash Pool in a separate interest-bearing account in escrow for distribution to the Unitholders in accordance with the Consolidated CCAA Plan.

### 5.7     Remaining Funds

Any final remaining balance in the Administrative Costs Reserve or the Unitholders' Distribution Cash Pool that have not been distributed by the Final Distribution Date on account of the cost of making any such distribution being prohibitive for so doing in relation to the quantum of the distribution contemplated in the Consolidated CCAA Plan will be paid to a charity in Winnipeg, Manitoba that will be determined at a later date.

### ARTICLE 6
### PROVISIONS REGARDING DISTRIBUTIONS AND PAYMENTS

### 6.1     Distributions from the Affected Creditors' Distribution Cash Pool

The Affected Creditors' Distribution Cash Pool shall be distributed by the Monitor, on behalf and for the account of the Arctic Glacier Parties, on the Plan Implementation Date or on any Distribution Date, as the case may be, to each Affected Creditor in the amount of such Affected Creditor's Distribution Claim by way of cheque sent by prepaid ordinary mail to the address for such Affected Creditor specified in the Proof of Claim filed by such Affected Creditor.

Following the distribution to be made by the Monitor, on behalf of the Arctic Glacier Parties, to Affected Creditors on the Plan Implementation Date pursuant to, and in accordance with, Section 8.3 of the Consolidated CCAA Plan, the Monitor shall have no further obligation to make any payment out of the Affected Creditors' Distribution Cash Pool, and nothing in the Consolidated CCAA Plan, the Meeting Order or the Sanction Order shall be construed as

- 21 -

obligating the Monitor to make any such payment if, in the Monitor's sole and unfettered discretion, the cost of making any such payment is prohibitive for so doing in relation to the quantum of the contemplated payment.

**6.2     Distributions from the Unitholders' Distribution Cash Pool**

The Monitor shall declare a Unitholder Distribution Record Date prior to any distribution, deemed or otherwise, from the Unitholders' Distribution Cash Pool. On the Plan Implementation Date or on any Distribution Date, as the case may be, the Monitor shall transfer amounts as determined by the Monitor in accordance with the Consolidated CCAA Plan, on behalf and for the account of the Fund, from the Unitholders' Distribution Cash Pool (each such transfer being a "**Unitholder Distribution**") to the Transfer Agent. As soon as reasonably practicable, and in no event later than five (5) Business Days following receipt of the Unitholder Distribution, the Transfer Agent shall distribute each Unitholder Distribution, on behalf and for the account of the Fund, by way of cheque sent by prepaid ordinary mail or by way of wire transfer to each Registered Unitholder, as of the applicable Unitholder Distribution Record Date that the Transfer Agent is aware of and has contact information in respect of, based on each Registered Unitholder's Pro Rata Share (a) for such Registered Unitholder, in respect of Trust Units held by such Registered Unitholder solely for and on behalf of itself, as applicable; or (b) for distribution by such Registered Unitholder to (i) Beneficial Unitholders, as applicable, or (ii) participant holders of the Trust Units or the intermediary holders of the Trust Units (collectively, the "**Nominees**"), or the agents of such Nominees for subsequent distribution to the applicable Beneficial Unitholders.

The Monitor shall have no obligation to make any payment out of the Unitholders' Distribution Cash Pool, and nothing in the Consolidated CCAA Plan, the Meeting Order or the Sanction Order shall be construed as obligating the Monitor to make any such payment if, in the Monitor's sole and unfettered discretion, the cost of making any such payment is prohibitive for so doing in relation to the quantum of the contemplated payment.

**6.3     Payment of Administrative Reserve Costs**

On the Plan Implementation Date, the Administrative Costs Reserve will be funded in accordance with Section 5.2 of the Consolidated CCAA Plan and shall be administered in accordance with the Consolidated CCAA Plan.

Any final remaining balance in the Administrative Costs Reserve following (a) payment in full or final reservation of all Administrative Reserve Costs, as determined by the Monitor; and (b) declaration by the Monitor of a Unitholder Distribution Record Date; shall be transferred by the Monitor to the Transfer Agent and shall be deemed to have first been transferred to the Unitholders' Distribution Cash Pool and then distributed therefrom by the Monitor, on behalf of the Fund, to the Transfer Agent. As soon as reasonably practicable and in no event later than five (5) Business Days following its receipt, such remaining final balance shall then be distributed by the Transfer Agent, on behalf and for the account of the Fund, to each Registered Unitholder, as of the applicable Unitholder Distribution Record Date that the Transfer Agent is aware of and has contact information in respect of in the manner prescribed in Section 6.2 herein based on each Registered Unitholder's Pro Rata Share (a) for such Registered Unitholder, in respect of Trust Units held by such Registered Unitholder solely for and on behalf of itself, as applicable; or (b) for distribution by such Registered Unitholder to (i) Beneficial Unitholders, as

- 22 -

applicable, or (ii) Nominees, or the agents of such Nominees for subsequent distribution to the applicable Beneficial Unitholders.

The Monitor shall have no obligation to make any payment or transfer out of the Administrative Costs Reserve, and nothing in the Consolidated CCAA Plan, the Meeting Order or the Sanction Order shall be construed as obligating the Monitor to make any such payment if, in the Monitor's sole and unfettered discretion, the cost of making any such payment is prohibitive for so doing in relation to the quantum of the contemplated payment.

**6.4    Payment of Insurance Deductible Reserve Costs**

On the Plan Implementation Date, the Insurance Deductible Reserve will be funded in accordance with Section 5.3 of the Consolidated CCAA Plan and shall be administered in accordance with the Consolidated CCAA Plan.

**6.5    Cancellation of Instruments Evidencing Affected Claims**

Following completion of the steps and transactions in the sequence set forth in Section 8.3 of the Consolidated CCAA Plan, all agreements, invoices and other instruments evidencing Affected Claims will not entitle any holder thereof to any compensation or participation other than as expressly provided for in the Consolidated CCAA Plan and will be cancelled and will be null and void.

**6.6    Crown Priority Claims**

Within six (6) months after the Plan Sanction Date, the Monitor, on behalf of the Arctic Glacier Parties, shall pay in full to Her Majesty in Right of Canada or any province all amounts of a kind that could be subject to a demand under Section 6(3) of the CCAA that were outstanding on the Filing Date and which have not been paid by the Plan Implementation Date ("**Crown Claims**").

**6.7    Currency**

Unless specifically provided for in the Consolidated CCAA Plan or the Sanction Order, for the purposes of distribution, an Affected Claim shall be denominated in the currency in which it is owed and all payments and distributions to the Affected Creditors on account of their Affected Claims shall be made in the currency in which they are owed. To the extent that there are insufficient funds to pay an Affected Claim in the currency in which it is owed, the Monitor shall be authorized to convert the currency on a date that is within five (5) Business Days of the Plan Implementation Date or any Distribution Date, as the case may be.

**6.8    Interest**

The interest rate that will be used to calculate the quantum of the Deemed Proven Claims and the Aggregate Interest Amount in respect of each other Proven Claim (save and except for the Canadian Direct Purchaser Proven Claim and the Indirect Purchaser Proven Claim) will be specified in the Sanction Order.

**6.9     Treatment of Undeliverable Distributions**

If any Affected Creditor's distribution by way of cheque is returned as undeliverable or is not cashed, no further distributions to such Affected Creditor shall be made unless and until the Arctic Glacier Parties and the Monitor are notified by such Affected Creditor of such Affected Creditor's current address, at which time all such distributions shall be made to such Affected Creditor without interest accruing on account of the cheque being undeliverable or not cashed. All claims for undeliverable or uncashed distributions in respect of Proven Claims will expire six (6) months after the date of such distribution, after which date the Proven Claims of any Affected Creditor or successor of such Affected Creditor with respect to such unclaimed or uncashed distributions shall be forever discharged and forever barred, without any compensation therefor, notwithstanding any federal, state or provincial laws to the contrary, at which time the cash amount held by the Monitor in relation to such Proven Claims will be, or will be deemed to be, transferred to the Administrative Costs Reserve, and will be distributed in accordance with the terms of the Consolidated CCAA Plan. Nothing contained in the Consolidated CCAA Plan shall require the Arctic Glacier Parties or the Monitor to attempt to locate any Affected Creditor.

If any distribution to a Registered Unitholder by way of cheque is returned as undeliverable or is not cashed, no further distributions to such Registered Unitholder shall be effected unless and until the Arctic Glacier Parties, the Monitor and the Transfer Agent are notified by or on behalf of such Registered Unitholder of such Registered Unitholder's current address, at which time all such distributions shall be effected towards such Registered Unitholder without interest. All claims for undeliverable or uncashed distributions to a Registered Unitholder will expire six (6) months after the date of such distribution, after which date the entitlement of any Registered Unitholder, as provided for in this Consolidated CCAA Plan, or of any successor of such Registered Unitholder with respect to such unclaimed or uncashed distribution shall be forever discharged and forever barred, without any compensation therefor, notwithstanding any federal, state or provincial laws to the contrary, at which time the cash amount held by the Transfer Agent in relation to such distribution will be transferred by the Transfer Agent to the Monitor and shall be held by the Monitor, on behalf of the Arctic Glacier Parties, in the Administrative Costs Reserve, and will be distributed in accordance with the terms of the Consolidated CCAA Plan. Nothing contained in the Consolidated CCAA Plan shall require the Arctic Glacier Parties, the Trustees, the Transfer Agent or the Monitor to attempt to locate any Registered Unitholder.

**6.10    Assignment of Claims for Voting and Distribution Purposes**

(a)     *Assignment of Claims Prior to the Creditors' Meeting*

Subject to any restrictions contained in Applicable Laws, Affected Creditors may transfer or assign the whole of their Claims (or where a Claim includes an indemnity claim, the whole of their Claims other than that part of the Claim relative to the indemnity) prior to the Creditors' Meeting provided that the Arctic Glacier Parties and the Monitor shall not be obliged to deal with any transferee or assignee as an Affected Creditor in respect thereof unless and until actual notice of the transfer or assignment, together with satisfactory evidence of such transfer or assignment has been given to the Arctic Glacier Parties and the Monitor by 5:00 p.m. (Toronto time) on the day that is at least five (5) Business Days immediately prior to the Creditors' Meeting, or such other date as the Monitor may agree. In the event of such notice of transfer or assignment prior to the Creditors' Meeting, the transferee or assignee shall, for all purposes, be

treated as the Affected Creditor of the assigned or transferred Claim, will be bound by any and all notices previously given to the transferor or assignor in respect of such Claim and shall be bound, in all respects, by any and all notices given and by the Orders of the CCAA Court in the CCAA Proceedings. For greater certainty, other than as described above, the Arctic Glacier Parties shall not recognize partial transfers or assignments of Claims.

(b)     *Assignment of Claims Subsequent to the Creditors' Meeting*

Subject to any restrictions contained in Applicable Laws, Affected Creditors may transfer or assign the whole of their Claims (or where a Claim includes an indemnity claim, the whole of their Claims other than that part of the Claim relative to the indemnity) after the Creditors' Meeting provided that the Arctic Glacier Parties and the Monitor shall not be obliged to deal with any transferee or assignee as an Affected Creditor and the Monitor shall not be obliged to make any distributions to the transferee or assignee in respect thereof unless and until actual notice of the transfer or assignment, together with evidence of the transfer or assignment and a letter of direction executed by the transferor or assignor, all satisfactory to the Arctic Glacier Parties and the Monitor, has been given to the Arctic Glacier Parties and the Monitor by 5:00 p.m. on the day that is at least five (5) Business Days immediately prior to the Plan Implementation Date or any Distribution Date(s), as the case may be, or such other date as the Monitor may agree. Thereafter, the transferee or assignee shall, for all purposes, be treated as the Affected Creditor of the assigned or transferred Claim, will be bound by any notices previously given to the transferor or assignor in respect of such Claim and shall be bound, in all respects, by notices given and steps taken, and by the orders of the CCAA Court in the CCAA Proceedings. For greater certainty, other than as described above, the Arctic Glacier Parties shall not recognize partial transfers or assignments of Claims.

**6.11    Assignment of Trust Units for Voting Purposes**

Subject to any restrictions contained in Applicable Laws, Unitholders may transfer or assign their Trust Units provided that the Arctic Glacier Parties, the Transfer Agent and the Monitor shall not be obliged to deal with any transferee or assignee of a Unitholder in respect thereof for purposes of their eligibility to consider and vote on the Consolidated CCAA Plan unless and until actual notice of the transfer or assignment, together with satisfactory evidence of such transfer or assignment has been given to and received by the Arctic Glacier Parties, the Transfer Agent and the Monitor by 5:00 p.m. (Toronto time) on the day immediately prior to the Unitholder Record Date. In the event of receipt of such notice of transfer or assignment prior to the Unitholder Record Date (as provided for in the immediately preceding sentence), the transferee or assignee shall, for all purposes be treated as the Unitholder of the assigned or transferred Trust Units, will be bound by any and all notices previously given to the transferor or assignor in respect of such Trust Units and shall be bound, in all respects, by any and all notices given and steps taken, and by the Orders of the CCAA Court in the CCAA Proceedings. For greater certainty, the Arctic Glacier Parties and the Transfer Agent shall not recognize partial transfers or assignments of Trust Units. In addition, under no circumstances shall the Arctic Glacier Parties, the Transfer Agent and the Monitor be obliged to deal with any transferee or assignee of a Unitholder for purposes of their eligibility to consider and vote on the Consolidated CCAA Plan who are not reflected as a Unitholder on the Unitholder Record Date.

**6.12    Allocation of Distributions**

All distributions made by the Monitor, on behalf of the Arctic Glacier Parties, pursuant to the Consolidated CCAA Plan shall be first in consideration for the outstanding principal amount of the Claims and secondly in consideration for accrued and unpaid interest and penalties, if any, which forms part of such Claims.

**6.13    Withholding and Reporting Requirements**

The Arctic Glacier Parties and the Monitor shall be entitled to deduct and withhold, or direct the Transfer Agent to deduct and withhold, from any distribution, payment or consideration otherwise payable to an Affected Creditor or Unitholder such amounts (a "**Withholding Obligation**") as the Arctic Glacier Parties, the Monitor or the Transfer Agent, as the case may be, is required or entitled to deduct and withhold with respect to such payment under the *Income Tax Act* (Canada), the IRC, or any other provision of any Applicable Law. To the extent that amounts are so deducted or withheld and remitted to the applicable Government Authority or as required by Applicable Law, such amounts deducted or withheld shall be treated for all purposes of the Consolidated CCAA Plan as having been paid to such Person as the remainder of the payment in respect of which such withholding and deduction were made. For greater certainty, no distribution, payment or other consideration shall be made to or on behalf of a holder of a Proven Claim or a Unitholder pursuant to the Consolidated CCAA Plan unless and until such Person has made arrangements satisfactory to the Arctic Glacier Parties, the Monitor, or the Transfer Agent, as the case may be, for the payment and satisfaction of any Withholding Obligations imposed on the Arctic Glacier Parties, the Monitor or the Transfer Agent by any Government Authority.

**ARTICLE 7**
**PROCEDURE FOR DISTRIBUTIONS REGARDING UNRESOLVED CLAIMS**

**7.1    No Distribution Pending Allowance**

Notwithstanding any other provision of the Consolidated CCAA Plan, no payments or distributions shall be made with respect to all or any portion of an Unresolved Claim unless and to the extent it has become a Proven Claim, in whole or in part.

**7.2    Unresolved Claims Reserve**

On the Plan Implementation Date, the Monitor shall establish and maintain the Unresolved Claims Reserve from the Available Funds, in accordance with Section 5.4 of the Consolidated CCAA Plan.

**7.3    Distributions After Unresolved Claims Resolved**

The Unresolved Claims shall be finally determined in accordance with the Claims Procedure Order and the Claims Officer Order. If an Affected Creditor's Unresolved Claim is finally determined to be a Proven Claim pursuant to and in accordance with the Claims Procedure Order and the Claims Officer Order or if an Affected Creditor's Unresolved Claim is accepted, in each case, in whole or in part, (a) the Monitor, on behalf of the Arctic Glacier Parties, shall distribute the amount from the Unresolved Claims Reserve equal to such Affected

- 26 -

Creditor's Distribution Claim, if any, that would have been distributed on the Plan Implementation Date or on a Distribution Date, as the case may be, had such Affected Claim been a Proven Claim (the "**Proven Claim Amount**") to such Affected Creditor in full satisfaction, payment, settlement, release and discharge of such Affected Creditor's Distribution Claim; and (b) that Proven Claim Amount shall be deemed to have first been transferred to the Affected Creditors' Distribution Cash Pool and then paid therefrom by the Monitor, on behalf of the Arctic Glacier Parties. When all Unresolved Claims have been finally determined in accordance with the Claims Procedure Order and the Claims Officer Order and when all Proven Claim Amounts have been paid, any balance that remains in the Unresolved Claims Reserve will be deemed to be transferred to the Administrative Costs Reserve.

The Monitor shall have no obligation to make any payment out of the Unresolved Claims Reserve, and nothing in the Consolidated CCAA Plan, the Meeting Order or the Sanction Order shall be construed as obligating the Monitor to make any such payment if, in the Monitor's sole and unfettered discretion, the cost of making any such payment is prohibitive for so doing in relation to the quantum of the contemplated payment.

## ARTICLE 8
## COMPANY REORGANIZATION

### 8.1    Corporate Authorizations

The adoption, execution, delivery, implementation and consummation of all matters contemplated under the Consolidated CCAA Plan involving corporate action of the Arctic Glacier Parties will occur and be effective as of the Plan Implementation Date, and will be authorized and approved under the Consolidated CCAA Plan and by the CCAA Court, where appropriate, as part of the Sanction Order, in all respects and for all purposes without any requirement of further action by any shareholders, Unitholders, Directors, Officers or Trustees. All necessary approvals to take actions shall be deemed to have been obtained from the Directors, Trustees, Unitholders or shareholders of the Arctic Glacier Parties, as applicable, including the deemed passing by the Unitholders or shareholders of any resolution or special resolution and no shareholders' agreement or Unitholders' agreement or agreement between a shareholder or Unitholder (as applicable) and another Person limiting in any way the right to vote shares or Trust Units (as applicable) held by such shareholder(s) or Unitholder(s) (as applicable) with respect to any of the steps contemplated by the Consolidated CCAA Plan shall be deemed to be effective and shall have no force and effect.

### 8.2    Charges

The beneficiaries of the Charges shall provide the Monitor with evidence of all outstanding, invoiced obligations, liabilities, fees and disbursements secured by the Charges as of three (3) Business Days prior to the Plan Implementation Date, along with a reasonable estimate of the additional obligations, liabilities, fees and disbursements that are secured by the Charges and will be incurred up to the Plan Implementation Date (collectively, the "**PID Charge Amount**"). On the Plan Implementation Date, the PID Charge Amount shall be fully paid by the Monitor, on behalf of the Arctic Glacier Parties. Upon receipt by the Monitor of confirmation from each of the beneficiaries of the Charges that it has received the applicable portion of the PID Charge Amount that was paid by the Monitor, on behalf of the Arctic Glacier Parties, on the Plan Implementation Date, the Monitor shall file a certificate with the CCAA Court confirming

- 27 -

that all outstanding, invoiced obligations, liabilities, fees and disbursements secured by the Charges as of the Plan Implementation Date have been paid and thereafter, the Charges shall be and be deemed to be discharged from the assets of the Arctic Glacier Parties without the need for any other formality.

### 8.3 Plan Implementation Date Steps and Transactions

The steps, transactions, settlements and releases to be effected in the implementation of the Consolidated CCAA Plan shall occur, and be deemed to have occurred, in the following order without any further act of formality, beginning at the Effective Time on the Plan Implementation Date:

(a) the Monitor, on behalf of the Arctic Glacier Parties, shall use the Available Funds to fund the following reserves and distribution cash pools in the order specified below:

    (i) Administrative Costs Reserve;

    (ii) Insurance Deductible Reserve;

    (iii) Unresolved Claims Reserve;

    (iv) Affected Creditors' Distribution Cash Pool; and

    (v) Unitholders' Distribution Cash Pool; and

    administer such reserves and distribution cash pools pursuant to and in accordance with the Consolidated CCAA Plan;

(b) the Monitor, on behalf of the Arctic Glacier Parties, shall pay from the Administrative Costs Reserve the applicable portion of the PID Charge Amount, if any, to each of the beneficiaries of the Charges;

(c) the Arctic Glacier Parties shall pay to the Monitor an amount of $426,252.16 (including HST) in respect of the discounted component of fees earned by Alvarez & Marsal Canada Inc. during the period of November 21, 2011 to December 31, 2012 (the "Recovered Fees");

(d) the steps, assumptions, distributions, transfers, payments, contributions, liquidations, dissolutions, wind-ups, reduction of capital, settlements and releases set out in Schedule "B" of the Consolidated CCAA Plan shall be deemed to be completed in the order specified therein; and

(e) the releases referred to in Section 9 of the Consolidated CCAA Plan shall become effective in accordance with the Consolidated CCAA Plan.

- 28 -

## 8.4    Post-Plan Implementation Date Transactions

As specified herein, the Fund, Arctic Glacier Inc. and Arctic Glacier International Inc., or the Monitor on their behalf, as the case may be, shall take the following steps after the Plan Implementation Date:

(a)    the Monitor, on behalf of the Arctic Glacier Parties, shall take all steps necessary to pay any amounts required to be paid to an Affected Creditor or to the Unitholders after the Plan Implementation Date pursuant to, and in accordance with, this Consolidated CCAA Plan;

(b)    (i) the Monitor, on behalf of the Arctic Glacier Parties, shall take all steps necessary to make any distributions, payments, or transfers in order to fund, or otherwise in connection with, the making of the payments referred to in subparagraph (a) above; and (ii) the Fund, Arctic Glacier Inc. and Arctic Glacier International Inc., in consultation with the Monitor, shall take all steps necessary to undertake any other transactions as between the Fund, Arctic Glacier Inc. and Arctic Glacier International Inc. in order to fund, or otherwise take steps in connection with, the making of the payments referred to in subparagraph (a) above; and

(c)    (i) the Fund, Arctic Glacier Inc. and Arctic Glacier International Inc., in consultation with the Monitor, shall take all steps necessary to wind-up, liquidate, terminate and dissolve each of Arctic Glacier International Inc., Arctic Glacier Inc. and the Fund or undertake any other steps in connection therewith, including causing the Fund's units to cease to be listed and traded on the Canadian National Stock Exchange on (and for greater certainty, not prior to) the Final Distribution Date; and (ii) the Monitor, on behalf of the Arctic Glacier Parties, shall make any distributions, payments or transfers in connection therewith;

in each case, as tax efficiently for the Arctic Glacier Parties as is reasonably possible.

## ARTICLE 9
## RELEASES

### 9.1    Consolidated CCAA Plan Releases

On the Plan Implementation Date and in accordance with the sequential steps and transactions set out in Section 8.3 of the Consolidated CCAA Plan, the Arctic Glacier Parties, the Monitor, Alvarez and Marsal Canada Inc. and its affiliates, the CPS, the Trustees, the Directors and the Officers, each and every present and former employee who filed or could have filed an indemnity claim or a DO&T Indemnity Claim against the Arctic Glacier Parties, each and every affiliate, subsidiary, member (including members of any committee or governance council), auditor, financial advisor, legal counsel and agent thereof and any Person claiming to be liable derivatively through any or all of the foregoing Persons (the "Releasees") shall be released and discharged from any and all demands, claims, actions, causes of action, counterclaims, suits, debts, sums of money, accounts, covenants, damages, judgments, orders, including for injunctive relief or specific performance and compliance orders, expenses, executions and other recoveries on account of any liability, obligation, demand or cause of action of whatever nature which any

- 29 -

Person may be entitled to assert, including any and all claims in respect of the payment and receipt of proceeds and statutory liabilities of Trustees, Directors, Officers and employees of the Arctic Glacier Parties and any alleged fiduciary or other duty (whether acting as a Trustee, Director, Officer, member or employee or acting in any other capacity in connection with the Arctic Glacier Parties' business or an individual Arctic Glacier Party), whether known or unknown, matured or unmatured, direct, indirect or derivative, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing or other occurrence existing or taking place on or prior to the later of the Plan Implementation Date and the date on which actions are taken to implement the Consolidated CCAA Plan that are in any way related to, or arising out of or in connection with the Claims, the Arctic Glacier Parties' business and affairs whenever or however conducted, the Consolidated CCAA Plan, the CCAA Proceedings, any Claim that has been barred or extinguished pursuant to the Claims Procedure Order or the Claims Officer Order (excepting only Releasees in respect of Unresolved Claims, unless and until such Unresolved Claims become Proven Claims in accordance with the Claims Procedure Order and the Claims Officer Order), and all claims arising out of such actions or omissions shall be forever waived and released (other than the right to enforce the Arctic Glacier Parties' obligations under the Consolidated CCAA Plan or any related document), all to the full extent permitted by applicable law, provided that nothing in the Consolidated CCAA Plan shall release or discharge a Releasee from any obligation created by or existing under the Consolidated CCAA Plan or any related document.

## ARTICLE 10
## COURT SANCTION, CONDITIONS PRECEDENT AND IMPLEMENTATION

### 10.1    Application for Sanction Order

If the Required Unitholder Majority approves the Consolidated CCAA Plan, the Applicants shall apply for the Sanction Order on or before the date set for the hearing of the Sanction Order or such later date as the CCAA Court may set.

### 10.2    Sanction Order

The Sanction Order shall, among other things, include provisions in substance similar to the following:

(a)    declare that each of the Creditors' Meeting and the Unitholders' Meeting shall have been duly called and held in accordance with the Meeting Order;

(b)    declare that (i) the Consolidated CCAA Plan has been unanimously approved by the Affected Creditors in conformity with the CCAA; (ii) the Consolidated CCAA Plan has been approved by the required majorities of Unitholders in conformity with the Meeting Order; (iii) the activities of the Arctic Glacier Parties have been in reasonable compliance with the provisions of the CCAA and the Orders of the CCAA Court made in the CCAA Proceeding in all respects; (iv) the CCAA Court is satisfied that the Arctic Glacier Parties have not done or purported to do anything that is not authorized by the CCAA; and (v) the Consolidated CCAA Plan and the transactions contemplated thereby are fair and reasonable;

- 30 -

(c)     declare that as of the Effective Time, the Consolidated CCAA Plan and all associated steps, settlements, transactions, arrangements and releases effected thereby are approved, binding and effective upon the Arctic Glacier Parties, all Affected Creditors, the Directors and Officers, the Unitholders, the Trustees, the Releasees and all other Persons named or referred to in, or subject to, the Consolidated CCAA Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns;

(d)     declare that the steps to be taken and the releases to be effective on the Plan Implementation Date are deemed to occur and be effected in the sequential order contemplated by the Consolidated CCAA Plan on the Plan Implementation Date, beginning at the Effective Time;

(e)     settle, discharge and release the Arctic Glacier Parties from any and all Affected Claims of any nature in accordance with the Consolidated CCAA Plan, and declare that the ability of any Person to proceed against the Arctic Glacier Parties in respect of or relating to any Affected Claims shall be forever discharged and restrained, and all proceedings with respect to, in connection with or relating to such Affected Claims are permanently stayed, subject only to (i) the right of Affected Creditors with Unresolved Claims to continue pursuing such Unresolved Claims in accordance with the Claims Procedure Order, the Claims Officer Order and the Consolidated CCAA Plan; and (ii) the right of Affected Creditors and Unitholders to receive payments and distributions pursuant to the Consolidated CCAA Plan;

(f)     stay the commencing, taking, applying for or issuing or continuing of any and all steps or proceedings, including without limitation, administrative hearings and orders, declarations or assessments, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against any Releasee in respect of all Claims and any matter which is released pursuant to the Consolidated CCAA Plan;

(g)     declare the interest rates that will be used to calculate the amount of interest to be paid to Affected Creditors, if applicable;

(h)     extend the stay of proceedings under the Initial Order;

(i)     declare that on or following the Plan Implementation Date, the Monitor shall be and is authorized and directed to make payments out of the Administrative Costs Reserve, on behalf of the Arctic Glacier Parties, in respect of the payment of Administrative Reserve Costs by way of cheque (sent by prepaid ordinary mail to the Monitor's last known address for such recipient Persons) or by wire transfer (in accordance with wire transfer instructions, if provided by such recipient Persons to the Monitor at least three (3) Business Days prior to the payment date set by the Monitor);

(j)     declare that all payments and distributions by or at the direction of the Monitor, in each case on behalf of the Arctic Glacier Parties or the Fund, as applicable, under the Consolidated CCAA Plan are for the account of the Arctic Glacier

- 31 -

Parties or the Fund, as applicable, and the fulfillment of their obligations under Consolidated CCAA Plan;

(k)     declare that none of the Monitor, the CPS, the Trustees and the Applicants shall incur any liability as a result of payments and distributions to the Unitholders, in each case on behalf of the Fund, once such distribution or payment has been made by the Monitor to, and confirmation of receipt has been received by the Monitor from, the Transfer Agent;

(l)     declare that the Monitor and the CPS shall not incur any liability under the Tax Statutes as a result of the completion of the steps or transactions contemplated by the Consolidated CCAA Plan, including in respect of its making any payments or distributions ordered or permitted under the Consolidated CCAA Plan or the Sanction Order and including any steps or transactions contemplated by Section 8.4 of this Consolidated CCAA Plan, and are released, remised and discharged from any claims against them under or pursuant to the Tax Statutes or otherwise at law, arising in respect of the completion of the steps or transactions contemplated by the Consolidated CCAA Plan, including in respect of its making any payments or distributions ordered or permitted under the Consolidated CCAA Plan or the Sanction Order and including any steps or transactions contemplated by Section 8.4 of this Consolidated CCAA Plan, and that any claims of such a nature are forever barred and extinguished;

(m)     subject to payment thereof, declare that each of the Charges shall be terminated, discharged and released upon the filing by the Monitor with the CCAA Court of the certificate contemplated by Section 8.2 of the Consolidated CCAA Plan;

(n)     declare that any Affected Claims for which a Proof of Claim has not been filed by the Claims Bar Date or the DO&T Indemnity Claims Bar Date, as applicable, shall be forever barred and extinguished;

(o)     authorize and direct the Monitor to, on and after the Plan Implementation Date, (i) complete the claims procedure established in the Claims Procedure Order and Claims Officer Order; and (ii) take such further steps and seek such amendments to the Claims Procedure Order, Claims Officer Order or additional orders of the CCAA Court as the Monitor considers necessary or appropriate in order to fully determine, resolve or deal with any Claims;

(p)     declare that, in addition to its prescribed rights under the CCAA and the powers granted by the CCAA Court, the powers granted to the Monitor are expanded as may be required to, and the Monitor is empowered and authorized on and after the Plan Implementation Date to, take such additional actions and execute such documents, in the name of and on behalf of the Arctic Glacier Parties, as the Monitor considers necessary or desirable in order to perform its functions and fulfill its obligations under the Consolidated CCAA Plan, the Sanction Order and any order of the CCAA Court in the CCAA Proceedings and to facilitate the implementation of the Consolidated CCAA Plan and the completion of the CCAA proceedings, including to: (i) administer and distribute the Available Funds; (ii) establish and hold the Administrative Costs Reserve, the Insurance

- 32 -

Deductible Reserve, the Unresolved Claims Reserve, the Affected Creditors' Distribution Cash Pool and the Unitholders' Distribution Cash Pool; (iii) resolve any Unresolved Claims; (iv) effect payments in respect of Proven Claims to the Affected Creditors and effect distributions to the Transfer Agent in respect of distributions to be made to Unitholders; (v) take such steps, if and as may be necessary, to address Excluded Claims in accordance with the Consolidated CCAA Plan, the Claims Procedure Order and the Claims Officer Order; and (vi) take such steps as are necessary to effect the post-Plan Implementation Date steps and transactions set out in Section 8.4 of the Consolidated CCAA Plan; and, in each case where the Monitor takes such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons including the Arctic Glacier Parties, and without interference from any other Person;

(q)     authorize the Monitor, in the name of and on behalf of the Arctic Glacier Parties, to prepare and file the Arctic Glacier Parties' tax returns based solely upon information provided by the Arctic Glacier Parties and on the basis that the Monitor shall incur no liability or obligation to any Person with respect to such returns or related documentation;

(r)     declare that on and after the Plan Implementation Date, the Monitor shall be at liberty to engage such Persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under the Consolidated CCAA Plan, the Sanction Order or any other order of the CCAA Court and to facilitate the completion of the CCAA proceedings;

(s)     declare that upon completion by the Monitor of its duties in respect of the Arctic Glacier Parties pursuant to the CCAA and any orders in the CCAA Proceedings, including, without limitation, the Monitor's duties in respect of the claims process and distributions made by the Monitor in accordance with the Consolidated CCAA Plan, the Monitor may file with the CCAA Court a certificate of Consolidated CCAA Plan termination stating that all of its duties in respect of the Arctic Glacier Parties pursuant to the CCAA and the orders in the CCAA Proceedings have been completed and thereupon, Alvarez & Marsal Canada Inc. shall be deemed to be discharged from its duties as Monitor of the Arctic Glacier Parties and released of all claims relating to its activities as Monitor;

(t)     declare that the Arctic Glacier Parties, the CPS and the Monitor may apply to the CCAA Court for advice and direction in respect of any matters arising from or under the Consolidated CCAA Plan; and

(u)     such other relief which the Arctic Glacier Parties or the Monitor may request.

## 10.3    Conditions Precedent to Implementation of the Consolidated CCAA Plan

The implementation of the Consolidated CCAA Plan shall be conditional upon the fulfillment of the following conditions on or prior to the Plan Implementation Date, as the case may be:

(a)    *Consolidated CCAA Plan Approval*

The Affected Creditor Class shall have been deemed to have unanimously voted in favour of the Consolidated CCAA Plan at the Creditors' Meeting and the Consolidated CCAA Plan shall be approved by the Required Unitholder Majority.

(b)    *Plan Sanction Order*

The Sanction Order shall have been made and be in full force and effect, and all applicable appeal periods in respect thereof shall have expired and any appeals therefrom shall have been finally disposed of, leaving the Sanction Order wholly operable.

(c)    *Recognition Order*

A Recognition Order in the Chapter 15 Proceedings shall have been made recognizing the Sanction Order and such order shall be in full force and effect, and all applicable appeal periods in respect thereof shall have expired and any appeals therefrom shall have been finally disposed of, leaving such Recognition Order wholly operable.

(d)    *Resolution of Certain Liabilities*

CPS and the Monitor are satisfied that (a) all tax returns required to be filed by or on behalf of the Arctic Glacier Parties have or will be duly filed in all appropriate jurisdictions; and (b) all taxes required to be paid in respect thereof have or will be paid.

**10.4   Monitor's Certificate**

Upon CPS and the Monitor determining, based on inquiries and consultation with the Arctic Glacier Parties or otherwise, that the conditions to implementation of the Consolidated CCAA Plan set out in Section 10.3 have been satisfied or waived, the Monitor shall deliver to the Arctic Glacier Parties a certificate which states that all conditions precedent set out in Section 10.3 have been satisfied or waived and that the Plan Implementation Date has occurred. Following the Plan Implementation Date, the Monitor shall file such certificate with the CCAA Court.

**ARTICLE 11**
**GENERAL**

**11.1   Binding Effect**

On the Plan Implementation Date:

(a)    the Consolidated CCAA Plan will become effective at the Effective Time;

(b)    the treatment of Affected Claims under the Consolidated CCAA Plan shall be final and binding for all purposes and enure to the benefit of the Arctic Glacier

Parties, all Affected Creditors, the Directors and Officers, the Unitholders, the Trustees, the Releasees and all other Persons and parties named or referred to in, or subject to, the Consolidated CCAA Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns;

(c)     all Affected Claims shall be forever discharged and released, excepting only (i) the right of Affected Creditors with Unresolved Claims to continue pursuing such Unresolved Claims in accordance with the Claims Procedure Order, the Claims Officer Order and the Consolidated CCAA Plan; and (ii) the obligation of the Arctic Glacier Parties to make payments and distributions in respect of such Affected Claims in the manner and to the extent provided for in the Consolidated CCAA Plan;

(d)     each Affected Creditor will be deemed to have consented and agreed to all of the provisions of the Consolidated CCAA Plan, in its entirety;

(e)     each Unitholder will be deemed to have consented and agreed to all of the provisions of the Consolidated CCAA Plan, in its entirety; and

(f)     each Affected Creditor and Unitholder shall be deemed to have executed and delivered to the Arctic Glacier Parties all consents, releases, assignments and waivers, statutory or otherwise, required to implement and carry out the Consolidated CCAA Plan in its entirety.

## 11.2    Waiver of Defaults

From and after the Plan Implementation Date, all Persons shall be deemed to have waived any and all defaults of the Arctic Glacier Parties then existing or previously committed by the Arctic Glacier Parties, or caused by the Arctic Glacier Parties, any of the provisions in the Consolidated CCAA Plan or steps contemplated in the Consolidated CCAA Plan, or non-compliance with any covenant, warranty, representation, term, provision, condition or obligation, expressed or implied, in any contract, instrument, credit document, lease, guarantee, agreement for sale or other agreement, written or oral, and any and all amendments or supplements thereto, existing between such Person and the Arctic Glacier Parties and any and all notices of default and demands for payment or any step or proceeding taken or commenced in connection therewith under any such agreement shall be deemed to have been rescinded and of no further force or effect, provided that nothing shall be deemed to excuse the Arctic Glacier Parties from performing their obligations under the Consolidated CCAA Plan or be a waiver of defaults by the Arctic Glacier Parties under the Consolidated CCAA Plan and the related documents. This Section does not affect the rights of any Person to pursue any recoveries for an Affected Claim that may be obtained from a guarantor and any security granted by such guarantor.

## 11.3    Claims Bar Date

Nothing in the Consolidated CCAA Plan extends or shall be interpreted as extending or amending the Claims Bar Date or the DO&T Indemnity Claims Bar Date, as applicable, or gives or shall be interpreted as giving any rights to any Person in respect of Affected Claims that have been barred or extinguished pursuant to the Claims Procedure Order or the Claims Officer Order.

**11.4    Deeming Provisions**

In the Consolidated CCAA Plan, the deeming provisions are not rebuttable and are conclusive and irrevocable.

**11.5    Non-Consummation**

The Arctic Glacier Parties reserve the right to revoke or withdraw the Consolidated CCAA Plan at any time prior to the Plan Sanction Date.  If the Arctic Glacier Parties revoke or withdraw the Consolidated CCAA Plan, if the Sanction Order is not issued, or if the Plan Implementation Date does not occur, (a) the Consolidated CCAA Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Consolidated CCAA Plan including the fixing or limiting to an amount certain any Claim, or any document or agreement executed pursuant to the Consolidated CCAA Plan shall be deemed null and void, and (c) nothing contained in the Consolidated CCAA Plan, and no acts taken in preparation for consummation of the Consolidated CCAA Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Affected Claims by or against the Arctic Glacier Parties or any other Person; (ii) prejudice in any manner the rights of the Arctic Glacier Parties or any other Person in any further proceedings involving the Arctic Glacier Parties; or (iii) constitute an admission of any sort by the Arctic Glacier Parties or any other Person.

**11.6    Modification of the Consolidated CCAA Plan**

(a)    The Arctic Glacier Parties reserve the right, at any time and from time to time, to amend, restate, modify and/or supplement the Consolidated CCAA Plan, provided that any such amendment, restatement, modification or supplement must be contained in a written document which is filed with the CCAA Court and (i) if made prior to the Creditors' Meeting and/or the Unitholders' Meeting, communicated to the Affected Creditors and/or the Unitholders, as applicable, in the manner required by the CCAA Court (if so required); and (ii) if made following the Creditors' Meeting and/or the Unitholders' Meeting, approved by the CCAA Court following notice to the Affected Creditors and/or the Unitholders, as applicable.

(b)    Notwithstanding Section 11.6(a), any amendment, restatement, modification or supplement may be made by the Arctic Glacier Parties with the consent of the Monitor or pursuant to an Order following the Plan Sanction Date, provided that it concerns a matter which, in the opinion of the Arctic Glacier Parties, acting reasonably, is of an administrative nature required to better give effect to the implementation of the Consolidated CCAA Plan and the Sanction Order or to cure any errors, omissions or ambiguities and is not materially adverse to the financial or economic interests of the Affected Creditors or the Unitholders.

(c)    Any amended, restated, modified or supplementary plan or plans of compromise filed with the CCAA Court and, if required by this Section, approved by the CCAA Court, shall, for all purposes, be and be deemed to be a part of and incorporated in the Consolidated CCAA Plan.

(d)     In the event that this Consolidated CCAA Plan is amended, the Monitor shall post such amended Consolidated CCAA Plan on the Monitor's Website and such posting shall constitute adequate notice of such amendment.

**11.7    Paramountcy**

From and after the Effective Time on the Plan Implementation Date, any conflict between:

(a)     the Consolidated CCAA Plan; and

(b)     the Meeting Order and the covenants, warranties, representations, terms, conditions, provisions or obligations, expressed or implied, of any contract, mortgage, security agreement, indenture, trust indenture, loan agreement, commitment letter, agreement for sale, articles or bylaws of the Arctic Glacier Parties, lease or other agreement, written or oral and any and all amendments or supplements thereto existing between one or more of the Affected Creditors or Unitholders, as the case may be, and the Arctic Glacier Parties as at the Plan Implementation Date;

will be deemed to be governed by the terms, conditions and provisions of the Consolidated CCAA Plan and the Sanction Order, which shall take precedence and priority.

**11.8    Severability of Plan Provisions**

If, prior to the Plan Sanction Date, any term or provision of the Consolidated CCAA Plan is held by the CCAA Court to be invalid, void or unenforceable, the CCAA Court, at the request of the Arctic Glacier Parties, shall have the power to either (a) sever such term or provision from the balance of the Consolidated CCAA Plan and provide the Arctic Glacier Parties with the option to proceed with the implementation of the balance of the Consolidated CCAA Plan as of and with effect from the Plan Implementation Date, or (b) alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, and provided that the Arctic Glacier Parties proceed with the implementation of the Consolidated CCAA Plan, the remainder of the terms and provisions of the Consolidated CCAA Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

**11.9    Reviewable Transactions**

Section 36.1 of the CCAA, sections 38 and 95 to 101 of the BIA and any other federal or provincial law relating to preferences, fraudulent conveyances or transfers at undervalue, shall not apply to the Consolidated CCAA Plan or to any payments or distributions made in connection with transactions entered into by or on behalf of the Arctic Glacier Parties, whether before or after the Filing Date, including to any and all of the payments, distributions and transactions contemplated by and to be implemented pursuant to the Consolidated CCAA Plan.

**11.10  Responsibilities of the Monitor**

Alvarez & Marsal Canada Inc. is acting in its capacity as Monitor in the CCAA Proceedings with respect to the Arctic Glacier Parties and the Consolidated CCAA Plan and not in its personal or corporate capacity, and will not be responsible or liable for any obligations of the Arctic Glacier Parties under the Consolidated CCAA Plan or otherwise.

**11.11  Different Capacities**

Persons who are affected by the Consolidated CCAA Plan may be affected in more than one capacity. Unless expressly provided herein to the contrary, a Person will be entitled to participate hereunder in each such capacity.  Any action taken by a Person in one capacity will not affect such Person in any other capacity, unless expressly agreed by the Person in writing or unless its Claims overlap or are otherwise duplicative.

**11.12  Notices**

Any notice or other communication to be delivered hereunder must be in writing and reference the Consolidated CCAA Plan and may, subject as hereinafter provided, be made or given by personal delivery, ordinary mail or by facsimile or email addressed to the respective parties as follows:

If to the Arctic Glacier Parties:

> c/o CPS
> 39 Wynford Drive
> Toronto ON M3C 3K5
> Attention:     Bruce Robertson
> Fax:             416-446-0050
> Email:          bkrobertson@yahoo.com

> with copies to:

> Aikins, MacAulay & Thorvaldson LLP
> 30th Floor Commodity Exchange Tower
> 360 Main Street, Winnipeg, Manitoba R3C 4G1
> Attention:     Hugh A. Adams and Dale R. Melanson
> Fax:             204-957-4437
> Email:          haa@aikins.com / drm@aikins.com

> Kevin P. McElcheran Professional Corporation
> 120 Adelaide St. West
> Suite 420, P.O. Box 43
> Toronto, Ontario M5H 1T1
> Attention:     Kevin P. McElcheran
> Email:          kevin@mcelcheranadr.com

- 38 -

If to an Affected Creditor:

> to the address or facsimile number or email address for such Creditor specified in the Proof of Claim filed by such Creditor;

If to the Monitor:

> Alvarez & Marsal Canada Inc.
> 200 Bay Street, Suite 2900
> Toronto, Ontario M5J 2J1
> Attention:    Richard Morawetz/ Melanie MacKenzie
> Fax:          416-847-5201
> Email:        rmorawetz@alvarezandmarsal.com/
>               mmackenzie@alvarezandmarsal.com

> with a copy to:

> Osler, Hoskin & Harcourt LLP
> 100 King Street West
> 1 First Canadian Place, Suite 6100, P.O. Box 50
> Toronto, Ontario M5X 1B8
> Attention:    Jeremy Dacks / Marc S. Wasserman / Michael De Lellis
> Fax:          (416) 862-6666
> Email:        jdacks@osler.com/mwasserman@osler.com/mdelellis@osler.com

or to such other address as any party may from time to time notify the others in accordance with this Section. Any such communication so given or made shall be deemed to have been given or made and to have been received on the day of delivery if delivered, or on the day of faxing or sending by other means of recorded electronic communication, provided that such day in either event is a Business Day and the communication is so delivered, faxed or sent before 5:00 p.m. CST or CDT, as the case may be, on such day. Otherwise, such communication shall be deemed to have been given and made and to have been received on the next following Business Day.

If, during any period during which notices or other communications are being given pursuant to this Consolidated CCAA Plan, a postal strike or postal work stoppage of general application should occur, such notices or other communications sent by ordinary mail and then not received shall not, absent further Order of the CCAA Court, be effective and notices and other communications given hereunder during the course of any such postal strike or work stoppage of general application shall only be effective if given by courier, personal delivery or electronic or digital transmission in accordance with this Order.

## 11.13  Further Assurances

Each of the Persons named or referred to in, or subject to, the Consolidated CCAA Plan will execute and deliver all such documents and instruments and do all such acts and things as may be necessary or desirable to carry out the full intent and meaning of the Consolidated CCAA Plan and to give effect to the transactions contemplated herein.

**DATED** as of the 26th day of August, 2014.

## SCHEDULE "A"
## ADDITIONAL APPLICANTS

Arctic Glacier California Inc.

Arctic Glacier Grayling Inc.

Arctic Glacier Lansing Inc.

Arctic Glacier Michigan Inc.

Arctic Glacier Minnesota Inc.

Arctic Glacier Nebraska Inc.

Arctic Glacier Newburgh Inc.

Arctic Glacier New York Inc.

Arctic Glacier Oregon Inc.

Arctic Glacier Party Time Inc.

Arctic Glacier Pennsylvania Inc.

Arctic Glacier Rochester Inc.

Arctic Glacier Services Inc.

Arctic Glacier Texas Inc.

Arctic Glacier Vernon Inc.

Arctic Glacier Wisconsin Inc.

Diamond Ice Cube Company Inc.

Diamond Newport Corporation

Glacier Ice Company, Inc.

Ice Perfection Systems Inc.

ICEsurance Inc.

Jack Frost Ice Service, Inc.

Knowlton Enterprises, Inc.

Mountain Water Ice Company

R&K Trucking, Inc.

Winkler Lucas Ice and Fuel Company

Wonderland Ice, Inc.

## SCHEDULE 'B'
## SPECIFIED PLAN IMPLEMENTATION DATE STEPS

In order to effect the wind-up, liquidation and dissolution of certain of the Arctic Glacier Parties to facilitate the satisfaction of Proven Claims and a distribution by the Fund to Unitholders pursuant to and in accordance with the Consolidated CCAA Plan, the following steps, assumptions, distributions, transfers, payments, contributions, liquidations, dissolutions, wind-ups, reduction of capital, settlements and releases shall be deemed to occur (a) immediately after the completion of the step set out in Section 8.3(c) of the Consolidated CCAA Plan; (b) in the order specified in this Schedule "B"; and (c) in the manner specified in this Schedule "B".

**Step 1: Assumption of Liabilities of Glacier Valley Ice Company, L.P.**

All of the liabilities of Glacier Valley Ice Company, L.P. shall be assumed by, and become liabilities of, its limited partner, Arctic Glacier California Inc. and such assumption shall constitute a contribution of capital by Arctic Glacier California Inc. to Glacier Valley Ice Company, L.P. in an amount equal to the aggregate amount of such liabilities.

**Step 2: Liquidation and dissolution of Glacier Valley Ice Company, L.P.**

Glacier Valley Ice Company, L.P. is wound-up and dissolved and, upon such dissolution:

    (a)    a 99.9% undivided interest in each of the assets of Glacier Valley Ice Company, L.P. shall be distributed to, and become property of, its limited partner, Arctic Glacier California Inc.; and

    (b)    a 0.1% undivided interest in each of the assets of Glacier Valley Ice Company, L.P. shall be distributed to, and become property of, its general partner, Mountain Water Ice Company (California).

**Step 3: Contribution of Intercompany Debts owing by Jack Frost Ice Service, Inc., Glacier Ice Company, Inc., Mountain Water Ice Company, Diamond Newport Corporation and Arctic Glacier Vernon Inc. (together, the "Step 3 Companies")**

    (a)    Arctic Glacier Inc. shall transfer any debt owing by a Step 3 Company to Arctic Glacier Inc. immediately prior to the completion of this Step 3(a) to Arctic Glacier International Inc. as a contribution to the capital stock of Arctic Glacier International Inc.

    (b)    Arctic Glacier International Inc. shall transfer any debt owing by a Step 3 Company to Arctic Glacier International Inc. immediately prior to the completion of this Step 3(b) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier Inc. to Arctic Glacier International Inc. pursuant to Step 3(a)) to Arctic Glacier California Inc. as a contribution to the capital stock of Arctic Glacier California Inc.

    (c)    Arctic Glacier California Inc. shall transfer any debt owing by a Step 3 Company to Arctic Glacier California Inc. immediately prior to the completion of this Step 3(c) (including, for greater certainty, the intercompany debt contributed by Arctic

- 2 -

Glacier International Inc. to Arctic Glacier California Inc. pursuant to Step 3(b)) to the applicable Step 3 Company as a contribution to the capital stock of that Step 3 Company and, upon such contribution, such debt shall be cancelled.

## Step 4: Assumption of Remaining Liabilities of the Step 3 Companies

All of the remaining liabilities of each Step 3 Company shall be assumed by, and become liabilities of Arctic Glacier California Inc. and such assumption shall constitute a contribution of capital by Arctic Glacier California Inc. to such Step 3 Company in an amount equal to the aggregate amount of such liabilities.

## Step 5: Liquidation and dissolution of the Step 3 Companies

Each of Step 3 Companies shall be liquidated and dissolved into Arctic Glacier California Inc. and, on such liquidation and dissolution:

(a) all of the assets of each of the Step 3 Companies shall be distributed to, and shall become property of, Arctic Glacier California Inc. and such assets shall be so received by Arctic Glacier California Inc. in respect of the shares of the capital stock of the Step 3 Companies; and

(b) all of the shares of each of the Step 3 Companies shall be cancelled.

Arctic Glacier California Inc. and each of the Step 3 Companies intend that this Consolidated CCAA Plan shall constitute a plan of liquidation within the meaning of the U.S. treasury regulations promulgated under Section 332 of the IRC.

## Step 6: Transfer of Shares of Winkler Lucas Ice and Fuel Company to Knowlton Enterprises Inc.

All of the shares of Winkler Lucas Ice and Fuel Company that are owned by Arctic Glacier Michigan Inc. (the "Transferred Shares") shall be transferred to Knowlton Enterprises Inc. and, in consideration therefore, Knowlton Enterprises Inc. shall be deemed to have issued to Arctic Glacier Michigan Inc., shares of its common stock with a fair market value equal to the fair market value of the Transferred Shares.

## Step 7: Contribution of Intercompany Debts owing by Winkler Lucas Ice and Fuel Company

(a) Arctic Glacier Inc. shall transfer any debt owing by Winkler Lucas Ice and Fuel Company to Arctic Glacier Inc. immediately prior to the completion of this Step 7(a) to Arctic Glacier International Inc. as a contribution to the capital stock of Arctic Glacier International Inc.

(b) Arctic Glacier International Inc. shall transfer any debt owing by Winkler Lucas Ice and Fuel Company to Arctic Glacier International Inc. immediately prior to the completion of this Step 7(b) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier Inc. to Arctic Glacier International Inc. pursuant to Step 7(a)) to Arctic Glacier Michigan Inc. as a contribution to the capital stock of Arctic Glacier Michigan Inc.

- 3 -

(c)    Arctic Glacier Michigan Inc. shall transfer any debt owing by Winkler Lucas Ice and Fuel Company to Arctic Glacier Michigan Inc. immediately prior to the completion of this Step 7(c) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier International Inc. to Arctic Glacier Michigan Inc. pursuant to Step 7(b)) to Knowlton Enterprises Inc. as a contribution to the capital stock of Knowlton Enterprises Inc.

(d)    Knowlton Enterprises Inc. shall transfer any debt owing by Winkler Lucas Ice and Fuel Company to Knowlton Enterprises Inc. immediately prior to the completion of this Step 7(d) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier Michigan Inc. to Knowlton Enterprises Inc. pursuant to Step 7(c)) to Winkler Lucas Ice and Fuel Company as a contribution to the capital stock of Winkler Lucas Ice and Fuel Company, and, upon such contribution, such debt shall be cancelled.

## Step 8: Assumption of Remaining Liabilities of Winkler Lucas Ice and Fuel Company

All of the remaining liabilities of Winkler Lucas Ice and Fuel Company shall be assumed by, and become liabilities of Knowlton Enterprises Inc. and such assumption shall constitute a contribution of capital by Knowlton Enterprises Inc. to Winkler Lucas Ice and Fuel Company in an amount equal to the aggregate amount of such liabilities.

## Step 9: Liquidation and dissolution of Winkler Lucas Ice and Fuel Company

Winkler Lucas Ice and Fuel Company shall be liquidated and dissolved into Knowlton Enterprises Inc. and, on such liquidation and dissolution:

(a)    all of the assets of Winkler Lucas Ice and Fuel Company shall be distributed to, and shall become property of, Knowlton Enterprises Inc. and such assets shall be so received by Knowlton Enterprises Inc. in respect of the shares of the capital stock of Winkler Lucas Ice and Fuel Company; and

(b)    all of the shares of Winkler Lucas Ice and Fuel Company shall be cancelled.

Knowlton Enterprises Inc. and Winkler Lucas Ice and Fuel Company intend that this Consolidated CCAA Plan shall constitute a plan of liquidation within the meaning of the U.S. treasury regulations promulgated under Section 332 of the IRC.

## Step 10: Contribution of Intercompany Debts owing by Arctic Glacier Lansing Inc., Arctic Glacier Grayling Inc, Arctic Glacier Party Time Inc., Wonderland Ice, Inc., R&K Trucking, Inc. and Knowlton Enterprises, Inc. (together, the "Step 10 Companies").

(a)    Arctic Glacier Inc. shall transfer any debt owing by a Step 10 Company to Arctic Glacier Inc. immediately prior to the completion of this Step 10(a) to Arctic Glacier International Inc. as a contribution to the capital stock of Arctic Glacier International Inc.

(b)    Arctic Glacier International Inc. shall transfer any debt owing by a Step 10 Company to Arctic Glacier International Inc. immediately prior to the completion

- 4 -

of this Step 10(b) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier Inc. to Arctic Glacier International Inc. pursuant to Step 10(a)) to Arctic Glacier Michigan Inc. as a contribution to the capital stock of Arctic Glacier Michigan Inc.

(c)    Arctic Glacier Michigan Inc. shall transfer any debt owing by a Step 10 Company to Arctic Glacier Michigan Inc. immediately prior to the completion of this Step 10(c) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier International Inc. to Arctic Glacier Michigan Inc. pursuant to Step 10(b)) to the applicable Step 10 Company as a contribution to the capital stock of that Step 10 Company and, upon such contribution, such debt shall be cancelled.

## Step 11: Assumption of Remaining Liabilities of the Step 10 Companies

All of the remaining liabilities of each Step 10 Company shall be assumed by, and become liabilities of Arctic Glacier Michigan Inc. and such assumption shall constitute a contribution of capital by Arctic Glacier Michigan Inc. to such Step 10 Company in an amount equal to the aggregate amount of such liabilities.

## Step 12: Liquidation and dissolution of the Step 10 Companies.

Each of Step 10 Companies shall be liquidated and dissolved into Arctic Glacier Michigan Inc. and, on such liquidation and dissolution:

(a)    all of the assets of each of the Step 10 Companies shall be distributed to, and shall become property of, Arctic Glacier Michigan Inc. and such assets shall be so received by Arctic Glacier Michigan Inc. in respect of shares of the capital stock of the Step 10 Companies; and

(b)    all of the shares of each of the Step 10 companies shall be cancelled.

Arctic Glacier Michigan Inc. and each of the Step 10 Companies intend that this Consolidated CCAA Plan shall constitute a plan of liquidation within the meaning of the U.S. treasury regulations promulgated under Section 332 of the IRC.

## Step 13:  Contribution of Intercompany Debts owing by Arctic Glacier Rochester Inc. and Diamond Ice Cube Company Inc. (the "Step 13 Companies").

(a)    Arctic Glacier Inc. shall transfer any debt owing by a Step 13 Company to Arctic Glacier Inc. immediately prior to the completion of this Step 13(a) to Arctic Glacier International Inc. as a contribution to the capital stock of Arctic Glacier International Inc.

(b)    Arctic Glacier International Inc. shall transfer any debt owing by a Step 13 Company to Arctic Glacier International Inc. immediately prior to the completion of this Step 13(b) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier Inc. to Arctic Glacier International Inc. pursuant to Step 13(a)) to Arctic Glacier New York Inc. as a contribution to the capital stock of Arctic Glacier New York Inc.

(c)      Arctic Glacier New York Inc. shall transfer any debt owing by a Step 13 Company to Arctic Glacier New York Inc. immediately prior to the completion of this Step 13(c) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier International Inc. to Arctic Glacier New York Inc. pursuant to Step 13(b)) to the applicable Step 13 Company as a contribution to the capital stock of that Step 13 Company and, upon such contribution, such debt shall be cancelled.

## Step 14: Assumption of Remaining Liabilities of the Step 13 Companies

All of the remaining liabilities of each Step 13 Company shall be assumed by, and become liabilities of Arctic Glacier New York Inc. and such assumption shall constitute a contribution of capital by Arctic Glacier New York Inc. to such Step 13 Company in an amount equal to the aggregate amount of such liabilities.

## Step 15: Liquidation and dissolution of the Step 13 Companies

Each of Step 13 Companies shall be liquidated and dissolved into Arctic Glacier New York Inc. and, on such liquidation and dissolution:

(a)      all of the assets of each of the Step 13 Companies shall be distributed to, and shall become property of, Arctic Glacier New York Inc. and such assets shall be so received by Arctic Glacier New York Inc. in respect of shares of the capital stock of the Step 13 Companies; and

(b)      all of the shares of each of the Step 13 companies shall be cancelled.

Arctic Glacier New York Inc. and each of the Step 13 Companies intend that this Consolidated CCAA Plan shall constitute a plan of liquidation within the meaning of the U.S. treasury regulations promulgated under Section 332 of the IRC.

## Step 16: Satisfaction of the CEPA Claim

The CEPA Claim shall be deemed to have been fully paid and satisfied by Arctic Glacier California Inc., released and discharged, and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of the CEPA Claim shall be held by the Monitor on behalf of the California Environmental Protection Agency – Department of Toxic Substance Control and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

## Step 17: Contribution of Intercompany Debts owing by Arctic Glacier Texas Inc., Arctic Glacier California Inc., Arctic Glacier Michigan Inc., Arctic Glacier Nebraska Inc., Arctic Glacier Wisconsin Inc., Arctic Glacier Minnesota Inc., Arctic Glacier New York Inc., Ice Perfection Systems Inc., Arctic Glacier Newburgh Inc., Arctic Glacier Pennsylvania Inc., Arctic Glacier Oregon Inc., Arctic Glacier Services Inc., and ICEsurance Inc. (together, the 'Step 17 Companies')

(a)      Arctic Glacier Inc. shall transfer any debt owing by a Step 17 Company to Arctic Glacier Inc. immediately prior to the completion of this Step 17(a) to Arctic

- 6 -

Glacier International Inc. as a contribution to the capital stock of Arctic Glacier International Inc.

(b)   Arctic Glacier International Inc. shall transfer any debt owing by a Step 17 Company to Arctic Glacier International Inc. immediately prior to the completion of this Step 17(b) (including, for greater certainty, the intercompany debt contributed by Arctic Glacier Inc. to Arctic Glacier International Inc. pursuant to Step 17(a)) to the applicable Step 17 Company as a contribution to the capital stock of that Step 17 Company and, upon such contribution, such debt shall be cancelled.

## Step 18: Assumption of Remaining Liabilities of the Step 17 Companies

All of the remaining liabilities of each Step 17 Company shall be assumed by, and become liabilities of Arctic Glacier International Inc. and such assumption shall constitute a contribution of capital by Arctic Glacier International Inc. to such Step 17 Company in an amount equal to the aggregate amount of such liabilities.

## Step 19: Liquidation and dissolution of the Step 17 Companies

Each of Step 17 Companies shall be liquidated and dissolved into Arctic Glacier International Inc. and, on such liquidation and dissolution:

(a)   all of the assets of each of the Step 17 Companies shall be distributed to, and shall become property of, Arctic Glacier International Inc. and such assets shall be so received by Arctic Glacier International Inc. in respect of shares of the capital stock of the Step 17 Companies; and

(b)   all of the shares of each of the Step 17 Companies shall be cancelled.

Arctic Glacier International Inc. and each of the Step 17 Companies intend that this Consolidated CCAA Plan shall constitute a plan of liquidation within the meaning of the U.S. treasury regulations promulgated under Section 332 of the IRC.

## Step 20: Satisfaction of the Proven Claims against Arctic Glacier International Inc.

(a)   The DOJ Claim shall be deemed to have been fully paid and satisfied by Arctic Glacier International Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the DOJ Claim shall be held by the Monitor on behalf of the US Department of Justice and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan; and

(b)   The portion of the Proven Claim of Macquarie Bank Limited that is denominated in US dollars shall be deemed to have been fully paid and satisfied by Arctic Glacier International Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of that portion of the Proven Claim shall be held by the Monitor on behalf of Macquarie Bank Limited and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

- 7 -

**Step 21: Contribution of Intercompany Debts owing by Arctic Glacier International Inc.**

Arctic Glacier Income Fund shall transfer any debt owing by Arctic Glacier International Inc. to Arctic Glacier Income Fund immediately prior to the completion of this Step 21 to Arctic Glacier Inc. as a contribution to the capital of Arctic Glacier Inc.

**Step 22: Set Off of intercompany debts between Arctic Glacier International Inc. and Arctic Glacier Inc.**

All or such portion of the aggregate of any amounts owing by Arctic Glacier Inc. to Arctic Glacier International Inc. immediately prior to the completion of this Step 22 (the "**AGI-AGII Payables**") as is equal to the lesser of:

     (i)    the amount of the AGI-AGII Payables, and

     (ii)   the aggregate of any amounts owing by Arctic Glacier International Inc. to Arctic Glacier Inc. immediately prior to the completion of this Step 22 (including, for greater certainty, the amount of intercompany debt contributed by Arctic Glacier Income Fund to Arctic Glacier Inc. pursuant to Step 21) (the "**AGII-AGI Payables**")

shall be fully and absolutely paid and satisfied by way of set off against all or such portion of the AGII-AGI Payables as is equal to the lesser of:

     (i)    the amount of the AGII-AGI Payables, and

     (ii)   the amount of the AGI-AGII Payables,

and, upon such set off, the portion of the AGI-AGII Payables and the portion of the AGII-AGI Payables that has been set off pursuant to the foregoing shall be deemed to have been absolutely paid and satisfied as a result of such set off.

**Step 23: Repayment of any remaining AGII-AGI Payables**

Arctic Glacier International Inc. shall be deemed to have paid to Arctic Glacier Inc. an amount equal to the least of:

     (i)    the aggregate amount of the AGII-AGI Payables, if any, that remains outstanding following the set off described in Step 22,

     (ii)   the AGII-AGI Total Distribution Amount, and

     (iii)  the Available Funds held by the Monitor on behalf of AGII immediately prior to the completion of this Step 23,

from the Available Funds held by the Monitor on behalf of Arctic Glacier International Inc. immediately prior to the completion of this Step 23 on account of the amount owing by Arctic Glacier International Inc. to Arctic Glacier Inc. under the AGII-AGI Payables and such amount shall be held by the Monitor on behalf of Arctic Glacier Inc.

- 8 -

**Step 24: Distribution by Arctic Glacier International Inc.**

Arctic Glacier International Inc. shall be deemed to have paid a distribution to Arctic Glacier Inc. on its shares of common stock in an amount equal to difference, if any, between the AGII-AGI Total Distribution Amount and the amount paid by Arctic Glacier International Inc. on Step 23 and such amount shall be held by the Monitor on behalf of Arctic Glacier Inc.

**Step 25: Satisfaction of the Proven Claims against Arctic Glacier Inc.**

   (a)   The Proven Claim of Brisson, Rosemary shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Brisson, Rosemary and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

   (b)   The Proven Claim of Fontaine, Mark shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Fontaine, Mark and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

   (c)   The Proven Claim of Waddell, Garth shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Waddell, Garth and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

   (d)   The Proven Claim of Winther, Neil shall be deemed to have been fully paid satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Winther, Neil and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

   (e)   The Proven Claim of Wohlgemuth, Michael shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Wohlgemuth, Michael and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

   (f)   The Proven Claim of Bailey, Doug shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Bailey,

- 9 -

Doug and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

(g)     The Proven Claim of Burrows, Keith shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Burrows, Keith and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

(h)     The Proven Claim of McMahon, Keith shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of McMahon, Keith and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

(i)     The Proven Claim of Knowles, Louise shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Knowles, Louise and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

(j)     The Proven Claim of Corbin, Keith and Shirley shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Corbin, Keith and Shirley and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

(k)     The portion of the Proven Claim of Macquarie Bank Limited that is denominated in Canadian dollars shall be deemed to have been fully paid and satisfied by Arctic Glacier Inc., released and discharged and such portion of the Affected Creditors' Distribution Cash Pool as is equal to the Distribution Claim in respect of such Proven Claim shall be held by the Monitor on behalf of Macquarie Bank Limited and distributed by the Monitor in accordance with Section 6.1 of the draft Consolidated CCAA Plan.

If all, or any portion of, such Proven Claims were liabilities of Arctic Glacier International Inc. (including liabilities assumed by Arctic Glacier International Inc. pursuant to this Consolidated CCAA Plan), the satisfaction of such, or the applicable portion of such, Proven Claims by Arctic Glacier Inc. shall be deemed to be a contribution by Arctic Glacier Inc. to the capital of Arctic Glacier International Inc. in an amount equal to the aggregate amount of such liabilities of Arctic Glacier International Inc.

- 10 -

**Step 26: Set Off of intercompany debts between Arctic Glacier Inc. and Arctic Glacier Income Fund.**

All or such portion of the aggregate of any amounts owing by Arctic Glacier Income Fund to Arctic Glacier Inc. immediately prior to the completion of this Step 26 (the "**AGIF-AGI Payables**") as is equal to the lesser of:

    (i)    the amount of the AGIF-AGI Payables, and

    (ii)    the aggregate of any amounts owing by Arctic Glacier Inc. to Arctic Glacier Income Fund immediately prior to the completion of this Step 26 (the "**AGI-AGIF Payables**")

shall be fully and absolutely paid and satisfied by way of set off against all or such portion of the AGI-AGIF Payables as is equal to the lesser of:

    (i)    the amount of the AGIF-AGI Payables, and

    (ii)    the amount of the AGI-AGIF Payables,

and, upon such set off, the portion of the AGIF-AGI Payables and the portion of the AGI-AGIF Payables that has been set off pursuant to the foregoing shall be deemed to have been absolutely paid and satisfied as a result of such set off.

**Step 27: Repayment of any remaining AGI-AGIF Payables**

Arctic Glacier Inc. shall be deemed to have paid to Arctic Glacier Income Fund an amount equal to the least of:

    (i)    the aggregate amount of the AGI-AGIF Payables, if any, that remains outstanding following the set off described in Step 26,

    (ii)    the AGI-AGIF Total Distribution Amount, and

    (iii)    the Available Funds held by the Monitor on behalf of AGI immediately prior to the completion of this Step 27,

from the Available Funds held by the Monitor on behalf of Arctic Glacier Inc. immediately prior to the completion of this Step 27 on account of the amount owing by Arctic Glacier Inc. to Arctic Glacier Income Fund under the AGI-AGIF Payables and such amount shall be held by the Monitor on behalf of Arctic Glacier Income Fund.

**Step 28: Return of Capital by Arctic Glacier Inc.**

The stated capital of Arctic Glacier Inc. shall be reduced by an amount (the "**Return of Capital Amount**") equal to the AGI-AGIF Total Distribution Amount less the amount of cash paid by AGI to AGIF on Step 27, by deducting that amount from the stated capital account maintained by Arctic Glacier Inc. for its common shares, and Arctic Glacier Inc. shall be deemed to have made a distribution of the Return of Capital Amount on the reduction of stated capital to Arctic Glacier Income Fund. The amount of cash in the Affected Creditors' Distribution Cash Pool and

- 11 -

the Unitholders' Distribution Cash Pool equal to the Return of Capital Amount shall be held by the Monitor on behalf of Arctic Glacier Income Fund.

## Step 29: Satisfaction of the Proven Claims against Arctic Glacier Income Fund and the Arctic Glacier Parties

All the Proven Claims against Arctic Glacier Income Fund and the Arctic Glacier Parties outstanding following the completion of Step 1 through 28, including for greater certainty, the Direct Purchaser Claim, shall be deemed to have been fully paid and satisfied, released and discharged and the remainder of the Affected Creditors' Distribution Cash Pool as is equal to the amount of the Distribution Claims in respect of such Proven Claims shall be held by the Monitor on behalf of the applicable creditors in respect of those Proven Claims and distributed by the Monitor in accordance with Section 6.1 of the Consolidated CCAA Plan.

If all, or any portion of, such Proven Claims were liabilities of Arctic Glacier Inc. and/or Arctic Glacier International Inc. (including, for greater certainty, any liabilities assumed by Arctic Glacier International Inc. on Step 18), the satisfaction of such, or the applicable portion of such, Proven Claims by Arctic Glacier Income Fund shall be deemed to be a contribution by Arctic Glacier Income Fund to the capital of Arctic Glacier Inc. and (where applicable) from Arctic Glacier Inc. to Arctic Glacier International Inc. in amounts equal to the aggregate amount of such liabilities of Arctic Glacier Inc. and Arctic Glacier International Inc. respectively.

## Step 30: Distribution by Arctic Glacier Income Fund.

Arctic Glacier Income Fund shall be deemed to have paid a distribution to each Unitholder in the amount of their Pro Rata Share of the Unitholders' Distribution Cash Pool immediately following the completion of Steps 1 through 29 above and such amount shall be transferred by the Monitor to the Transfer Agent and distributed by the Transfer Agent to the Unitholders in accordance with Section 6.2 of the Consolidated CCAA Plan.